**K. S. CORP., Plaintiff,**

v.

**The CHEMSTRAND CORPORATION and Fabrex Corp., Defendants.**

United States District Court
S. D. New York.
Jan. 19, 1962.

See also 198 F.Supp. 310.

Royall, Koegel & Rogers, New York City, Frederick W. P. Lorenzen and Laura Chapman Hruska, New York City, of counsel, for plaintiff.

Shearman & Sterling, New York City, for defendant Chemstrand Corporation.

Hahn, Hessen, Margolis & Ryan, New York City, for defendant Fabrex Corp.

PALMIERI, District Judge.

Defendant The Chemstrand Corporation (Chemstrand) has moved for an order sustaining its objections to certain interrogatories propounded by plaintiff in a private treble damage action against Chemstrand, a manufacturer of synthetic fibers, and Fabrex Corp. (Fabrex), a competing converter. The complaint contains three causes of action, two of which are relevant to the instant motion. The first charges that defendant Chemstrand violated section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13, by its refusal to grant plaintiff advertising, promotional allowances, services, and inventory financing, repeatedly granted to defendant Fabrex, and by its refusal to grant plaintiff a license to use Chemstrand's trademarks Acrilan and A–Acrilan even though such license was granted defendant Fabrex free of charge and for use on finished goods no better than or inferior to the finished goods of plaintiff. The second cause of action alleges that defendants Chemstrand and Fabrex engaged in a conspiracy, in violation of the Sherman Act, 15 U.S.C.A. §§ 1, 2, to maintain and increase the position and sales volume of defendant Fabrex in the women's and children's sportswear,

dress and coat market, and to prevent plaintiff from becoming a substantial competitor and to eliminate it from that market. The complaint alleges that pursuant to that conspiracy defendants sought to induce and induced others to cease doing business with the plaintiff and diverted such business to Fabrex; secured from plaintiff its business secrets and utilized the information for the benefit of Fabrex; induced plaintiff to discontinue a contract action against the defendants; and engaged in the conduct described above under the Robinson-Patman cause of action.

Oft repeated objections to the interrogatories are that the interrogatories are irrelevant because not confined to what defendant considers to be the scope of the complaint; that denial of a license does not constitute a violation of the Robinson-Patman Act; and that the information requested is confidential.

■ I shall not discuss the extent to which the information called for by the various interrogatories relates directly to issues raised by the pleadings, because I do not think the pleadings should be the sole determinant of permissible discovery. See Freund, The Pleading and Pre-Trial of an Antitrust Claim, 46 Cornell L.Q. 555, 573, n. 103 (1960–61). Pleadings are easily amended, and deemed to be amended to conform to the evidence that has been introduced. See Rule 15, Fed.R.Civ.P. 28 U.S.C.A.; 3 Moore's Federal Practice ¶ 15.02. Rather, the problem is to permit a litigant to obtain whatever information he may need to prepare adequately for the issues that may develop, without imposing an onerous burden of information gathering on his adversary. It is with those criteria in mind that I have considered and modified the interrogatories objected to.

■■ Defendant has cited no case in support of the proposition that discrim-

ination in granting or withholding of a trademark does not violate the Robinson-Patman Act. A conclusion that such discrimination is within the scope of conduct prohibited by the Robinson-Patman Act is not precluded by the language of that statute[1] and is consonant with its purpose of protecting purchasers against discrimination resulting from unequal furnishing of facilities for marketing the seller's goods. See Simplicity Pattern Co. v. Federal Trade Commission, 103 U.S.App.D.C. 373, 258 F.2d 673, 678 (1958), affirmed in part, reversed on other grounds, 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079, rehearing denied, 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93 (1959). Plaintiff should not be foreclosed from information that may enable it to establish the factual background which would permit it to urge that legal result. Moreover, much of the information objected to on this ground is relevant to plaintiff's contention that Chemstrand's denial of the trademarks to plaintiff was an element of the conspiracy to eliminate it as a competitor.

The problem created by the confidential character of some of the information can probably be solved best by counsel agreeing that counsel for plaintiff will not divulge the information to their client or that the information be deposited under seal with the clerk of the court pending whatever use the trial court may see fit to make of it and subject to further order of this Court. If counsel cannot agree, the Court will give consideration to appropriate conditions in the order to be submitted.

*Interrogatories 1(d), 1(e) and 1(f)*

■ Defendant is directed to answer Interrogatories 1(d), 1(e), and 1(f) by stating the amount it has expended to advertise its trademarks Acrilan and A–Acrilan (1) annually, for each of the six years preceding the filing of the com-

---

1. 15 U.S.C.A. § 13(e) provides, in part: "It shall be unlawful for any person to discriminate in favor of one purchaser * * * by furnishing any facilities connected with the * * * offering for sale of such commodity * * * not accorded to all purchasers on proportionally equal terms."

plaint, and (2) the total so expended to date.

I cannot agree with defendant Chemstrand that there is no correlation between the amounts expended on the advertising of a trademark and its value. Evidence that the trademarks were widely publicized and that defendant expended large sums to this end would permit the trier of facts to infer that these trademarks were valuable, and that defendant so considered them; both inferences are relevant to the conspiracy allegation, and may be relevant to the Robinson-Patman allegation.

*Interrogatories 1(g), 14 and 15*

■ These interrogatories request detailed information on all advertisements containing the trademarks Acrilan or A-Acrilan appearing in 1959 and 1960, and on advertising benefits and promotional assistance furnished by Chemstrand during those years. Defendant is directed to answer these interrogatories as follows:

*Interrogatory No. 1(g)*: With respect to each such advertisement featuring or including the name "Acrilan" or "A-Acrilan," appearing in the calendar years 1959 and 1960, state:

(i) The name and medium of communication in which such advertisement or publicity appeared.

(ii) The date of appearance of each such advertisement.

(iii) Whether Chemstrand paid for the advertisement, and the amount paid by Chemstrand, whether directly or indirectly (by way of allowances, rebates or otherwise), for each such advertisement.

(iv) Whether or not the amount paid by Chemstrand was in full or part payment for each such advertisement.

(v) If Chemstrand's payment was part payment only, the name of the person or entity making the balance of the payment, and the amount of such balance.

(vi) The name of the recipient of each payment or contribution made by Chemstrand for such advertisements.

(ix) The name of each person acting for, employed by, or formerly employed by Chemstrand, responsible for the decision to place such advertisement or for the decision as to the contents thereof, if such information is readily available, if not, indicate the sources where it may be obtained.

*Interrogatory No. 14*: State the names of all parties (including but not limited to defendant Fabrex and its customers) to whom Chemstrand has furnished any advertising benefits, in any form whatever, in the calendar years 1959 and 1960, related in any manner to Acrilan acrylic fibers or products made therefrom. In each such case state:

(a) The date thereof, the nature of the benefit given, whether money, services, concessions in price or other benefit.

(b) The date and nature of the agreement, whether it was oral or in writing, and the substance of its provisions with respect to advertising benefits.

(c) The amount paid by Chemstrand in connection with such advertising.

(d) The names of the individuals acting on behalf of each party to such agreement, and the capacity in which each acted.

(e) The recipient of such payment.

(f) The nature of the product advertised (construction of fabric and/or type of garment or other product).[2]

(g) Whether or not the trademarks "Acrilan", "A-Acrilan", or

---

2. Defendant may answer Interrogatories (f) through (j) by supplying plaintiff ■ with copies of the advertisements, or by indicating where copies may be obtained.

both, appeared in such advertisement.

(h) Whether or not any other trademark appeared in such advertisement and, if so, describe it.

(i) Whether or not the name of any converter, manufacturer or retailer appeared in such advertisement and, if so, describe or identify such party.

(j) On what date and in what medium of communication did each advertisement appear.

*Interrogatory No. 15*: State the names of the parties (including but not by way of limitation, Fabrex and its customers) to whom defendant has furnished any promotional assistance, in any form, in the calendar years 1959 and 1960, related in any manner to Acrilan acrylic fibers or products made therefrom. In each case state:

(a) The nature of the benefit given, whether money, services, written material, demonstrators, use of "merchandising group" or otherwise.

(b) The nature and substance of the agreement with respect to such promotion between Chemstrand and any other party to such agreement, whether it was oral or in writing, and the substance of its provisions.

(c) The names of the individuals acting on behalf of each party to such agreement and the capacity in which each acted.

(d) The amount paid by Chemstrand in connection with such promotion.

(e) The recipient of such payment.

(f) The nature of the product promoted (composition of fabric and/or type of garment or other product).[3]

(g) Whether or not the trademarks "Acrilan", "A–Acrilan", or both, appeared in the promotion or

promotional material and, if so, specify which.

(h) Whether or not any other trademark or trade name appeared in the promotion or promotional material and, if so, describe it.

(i) Whether or not the name of any converter, manufacturer or retailer appeared in such promotion or promotional material and, if so, describe and identify such party.

(j) On what date or dates and in what place or places did each such promotion take place.

*Interrogatories 8, 30 and 34*

■ Interrogatories 8 and 30 require defendant to furnish detailed information on all agreements between Fabrex and Chemstrand, relating to Chemstrand's Acrilan acrylic fibers, and on all agreements or understandings existing in 1959 and 1960 between Chemstrand and Fabrex, or Chemstrand and U. S. Rubber Company (the mill from which both plaintiff and Fabrex allegedly purchased greige goods to be converted), bearing upon advertising, promotions, inventory financing, or return of unused inventory by Fabrex or U. S. Rubber Company to Chemstrand. Interrogatory 34 is a catch-all interrogatory requiring Chemstrand to list every agreement between it and Fabrex entered into or relating to 1959 and 1960, not listed in responses to previous interrogatories, and to furnish detailed information about them.

Defendant is directed to answer Interrogatories 8(a) and (b) and to furnish the information requested in Interrogatories 8(c) through 8(f) concerning agreements entered into after plaintiff became a purchaser of Chemstrand's acrylic fiber.

Defendant's objections to Interrogatory 30 are overruled.

Defendant is directed to furnish the information requested by Interrogatory

---

3. If the information is available outside of defendant's files, defendant may answer Interrogatories (f) through (i) by indi-

cating where the information may be obtained.

34, but only as to agreements having a possible bearing on plaintiff. It is most likely that relevant information will have been elicited by other more specific interrogatories, and whatever possibility there remains that plaintiff may uncover additional relevant information is outweighed by the onerous burden such a broad interrogatory would impose on defendant.

### Interrogatories 17, 29 and 36

 Interrogatory 17 requires Chemstrand to furnish information concerning tests applied by it to samples submitted by converters and manufacturers wishing to use the Acrilan and A–Acrilan trademarks. Defendant is directed to answer this interrogatory but it need do so only with respect to the tests applied by it since plaintiff first requested a license to use Chemstrand's trademarks.

■ Interrogatory 29 requires Chemstrand to state whether it has conducted or participated in surveys that would indicate the effectiveness of its advertising on the saleability of the type of goods produced from its fibers, on goods produced from its fibers, and on goods bearing its Acrilan and A–Acrilan trademarks, and if so, to furnish certain information about such surveys, including their result. This information could be used by plaintiff both to show that Chemstrand had reason to believe that the facilities alleged to have been unlawfully denied plaintiff were valuable and to show the value of these facilities. Contrary to Chemstrand's contentions, I do not think that such surveys would constitute admissions by it of the opinions contained therein. Defendant is, therefore, directed to answer Interrogatory 29.

Interrogatory 36 is another very broad and general interrogatory which would appear to impose a burden too onerous to be justified by the additional information that will be brought to light, particularly as much of the information requested in the first part will have been given in responses to other interrogatories. However, plaintiff has pointed out that counsel for defendant has made no claim that it is burdensome, but on the contrary, has told counsel for plaintiff that defendant would possess few, if any, items responsive to this interrogatory. I therefore direct that the interrogatory be answered with the following modifications: In the first half of the interrogatory, defendant shall not be required to give addresses of the writings. In the second half of the interrogatory defendant shall be required to identify the writing by date, subject and author, but shall not be required to state its contents, and shall not be required to give the requested information with respect to prospective customers or with respect to the U. S. Rubber Company.

An order may be submitted on notice if one is deemed to be desirable by either party. Otherwise this may be considered an order.