**Mildred DOLGOW et al., Plaintiffs,**

v.

**Dillon ANDERSON et al., Defendants.**

**No. 66 Civ. 1057.**

United States District Court, E. D. New York.

Oct. 8, 1971.

See also D.C., 53 F.R.D. 664.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiffs.

Shearman & Sterling, New York City, for defendant, Monsanto Company; John A. Wilson, Michael J. DeSantis, Lawrence G. Golde, New York City, of counsel.

Sullivan & Cromwell, New York City, for individual defendants; David W. Peck, Roy H. Steyer James W. Bowers, New York City, of counsel.

John L. Davidson, Jr., St. Louis, Mo., for defendant Mercantile Trust Company National Association, as Executor.

WEINSTEIN, District Judge.

Discovery in this case has been extensive. There are scores of docket entries, some dozen formal orders and at least a like number of informal orders as a result of numerous undocketed telephone calls to the court and conferences in chambers.

Extensive depositions of Monsanto's former Chairman of the Board and President and of a Vice-President were taken. At a hearing agreed by the parties to be "in the nature of discovery" held in December of 1968, ten witnesses, including the key defendants, were produced in court. All but two of them (experts whose testimony would have been cumulative) were examined and cross-examined at length. Plaintiffs were invited to call additional witnesses, but they refrained from doing so. At the end of the hearing the court ruled that there had been "full discovery."

Plaintiffs make various charges of bad faith in late delivery of documents inhibiting them in conducting examinations. None of these charges has merit. The court finds that all attorneys—both those of defendants and of plaintiffs—dealt fairly and in good faith with each other. All parties have had a full opportunity to develop the facts.

On August 23, 1971, some two years after discovery was completed and motions for summary judgment were submitted, plaintiffs for the first time supplied an affidavit from a witness of their own, Sidney Robbins, Professor of Finance at the Columbia University Graduate School of Business. Professor Robbins was permitted to testify and was cross-examined at some length. His affidavit suggests a number of avenues of discovery that might be helpful in preparing plaintiffs' case. They are set out indented and single spaced below, with the Court's analysis of their possible value immediately following:

I

In order to be of assistance to the Court in demonstrating which of the operating problems that Monsanto was encountering, would be of significance

to an investor, I would need to see the projected capital costs, the fixed overhead, and the incremental costs associated with each of the [new capital] projects, and their relation to the projection of earnings shown in the Monsanto budgets. I understand that plaintiffs have not had access to these figures.

The basic budget and data available to management on this subject was given to plaintiffs. When defendants were available to plaintiffs for cross-examination there was no suggestion that defendants were aware of any substantial information not known to plaintiffs as a result of discovery or general knowledge.

## II

In order to be in a position to meaningfully question Monsanto's management as to the assumptions and procedures adopted in the preparation of the company's budget, and as to what actually transpired in comparison with the budget, it is necessary to have more data than is now available. For this purpose, it would be essential to know such things as the reliability of prior budgets, and the procedures adopted to correct any errors, the capacity levels of facilities, etc. of particular significance is the unit cost for various products, including both the fixed overhead and the incremental cost (this breakdown is vital, for unit cost will vary considerably, depending upon the degree of utilization of facilities).

The budgetary material for a period beginning before and ending after the critical dates in the litigation were made available to plaintiffs. There was not the slightest hint at the examinations of defendants or through any other material that there were known inaccuracies in the budgetary process. To open up budgets for earlier periods would enormously increase the expense of the litigation for no useful purpose.

## III

Mr. Lucas stated that he made a presentation once a week . . . to groups of security analysts. . . . [I]n order to assess the degree to which Mr. Lucas may have been promoting the stock . . . it is necessary to know what Mr. Lucas said at those meetings.

Mr. Lucas was available as a witness and could have been asked these questions. Plaintiffs could have called persons Mr. Lucas spoke to if they were not satisfied with his answers.

## IV

To evaluate whether Monsanto was deliberately trying to influence the price of its shares would require knowledge of all factors pertaining to the entry of its orders, such as the internal authorization, the terms of the order, i. e., market or limit, the time of day, whether the company was aware of prior prices, as well as knowledge of the market.

A full tabulation of purchases by Monsanto of its own shares for the period April 11, 1962 to April 11, 1967 was furnished to plaintiffs. In addition, plaintiffs presented an expert, Neidig, who testified with respect to these transactions. There was no indication from plaintiffs' cross-examination that this kind of detail would have been useful or available. Demands for such details as the time of day for purchases of shares required to round out fractional shares purchased in connection with year-end two percent stock dividends can only be construed as designed to harass. Monsanto has more than 30 million shares outstanding, and the trading volume in Monsanto shares on an annual basis during the period was some 2½ to 3 million. The purchases by Monsanto were small and were for the purpose of rounding out fractional shares, for bonuses under its shareholder approved Bonus Plan, and to provide for future acquisitions of this kind.

Not a scintilla of evidence suggests that defendants engaged in these purchases to inflate the market so that they could profit.

None of the other proposed avenues of inquiry suggested in any of plaintiffs' papers warrants detailed discussion. They are even less justifiable than those already noted. Nothing in Professor Robbins' testimony expanded on his affidavit relative to the question of whether further discovery should be permitted.

■■ A trial court has a duty, of special significance in lengthy and complex cases where the possibility of abuse is always present, to supervise and limit discovery to protect parties and witnesses from annoyance and excessive expense. As the Second Circuit has put it:

> "The plaintiff * * * may not seek indefinitely * * * to use the [discovery] process to find evidence in support of a mere 'hunch' or 'suspicion' of a cause of action." Waldron v. Cities Service Co., 361 F.2d 671, 673 (2d Cir. 1966), aff'd, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

*See also, e. g.,* Paramount Film Distributing Corp. v. Civic Center Theatre, Inc., 333 F.2d 358, 362 (10th Cir. 1964). Our discretion to limit discovery is necessarily broad. Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969).

The applicable test was aptly stated by Judge Palmieri in K. S. Corp. v. Chemstrand Corp., 203 F.Supp. 230, 232 (S.D.N.Y.1962):

> "[T]he problem is to permit a litigant to obtain whatever information he may need to prepare adequately for the issues that may develop, without imposing an onerous burden of information gathering on his adversary."

■ Although caution should be exercised in order not to foreclose any legitimate avenue of inquiry prematurely, where the issues have been explored and sharply defined, the court is competent to decide what evidence may be of possible relevance. United States v. R. J. Reynolds Tobacco Co., 268 F.Supp. 769, 774 (D.N.J.1966). "Protracted litigation is inherently burdensome * *. Nevertheless, a line must be drawn." Id. at 774.

■ The need for line drawing is particularly important in class actions where the court has supervised discovery and participated actively in the development of the case to prevent abuse. *See* Green v. Wolf Corporation, 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Dolgow v. Anderson, 43 F.R.D. 472, 489–490, 501–502 (E.D.N.Y.1968). In such complex litigation, discovery must be "carefully controlled." Manual for Complex and Multidistrict Litigation ¶ 1.7 (1969).

Permitting further proliferation of discovery would burden the parties as well as the Court for no useful purpose. No further discovery in this case will be allowed.

So ordered.