**Mary Ann WORKMAN and Mark D. Workman, husband and wife, Plaintiffs,**

v.

**Harry CHINCHINIAN and Jane Doe Chinchinian, husband and wife, Defendants.**

No. CS–91–0152–AAM.

United States District Court, E.D. Washington.

March 6, 1992.

Frederic G. Fancher, Richter–Wimberley, P.S., Spokane, WA, for plaintiffs.

Michael E. Ramsden, Quane, Smith, Howard & Hull, Coeur d'Alene, ID, for defendants.

## ORDER RE: CHOICE OF LAW & OTHER PRETRIAL MOTIONS

McDONALD, District Judge.

The following motions are before the court for resolution without oral argument: (1) Plaintiffs' Motion to Determine Choice of Law (Ct.Rec. 34); (2) Plaintiffs' Motion in Limine (Ct.Rec. 22); (3) Plaintiffs' Motion to Strike Dr. Chinchinian's Deposition Correction Sheet as Untimely (Ct.Rec. 26); (4) Plaintiffs' Motion to Compel Completion of Answers to Interrogatories (Ct.Rec. 30); (5) Defendants' Alternative Motion to Compel Completion of Answers to Interrogatories (In the Event the Court Grants Plaintiffs' Motion to Compel Completion of Answers to Interrogatories); (6) Plaintiffs' Motion to Determine Sufficiency of Defendants' Objections and Answers to Plaintiffs' Requests for Admission (Ct.Rec. 39);

and (7) Plaintiffs' Motion for Preservation Depositions of Drs. Middleton and Sasser (Ct.Rec. 62). Michael E. Ramsden represents the defendants. The plaintiffs are represented by F.G. Fancher.

## STATEMENT OF FACTS

This is a medical malpractice action against a pathologist where jurisdiction is based on diversity of citizenship. The plaintiffs are residents of Moscow, Idaho. The defendants are residents of Clarkston, Washington. The facts of this case are fully set forth in this Court's Order Denying Abstention (Ct.Rec. 78) and will not be repeated here except as necessary to facilitate the discussion of the issues now under review.

## DISCUSSION

I. *Plaintiffs' Motion to Determine Choice of Law.*

█ A federal court sitting in diversity must apply the choice-of-law principles of the forum state. *Federal Ins. Co. v. Scarsella Bros., Inc.*, 931 F.2d 599, 602 (9th Cir.1991); *Martinez v. Asarco, Inc.*, 918 F.2d 1467, 1470 (9th Cir.1990). Thus, this court will look to Washington's conflict-of-law rules to determine the applicable state substantive law.

█ Following the approach developed in the Restatement (Second) of Conflict of Laws § 6 (1971), Washington has adopted the most significant relationship rule for choice-of-law problems in cases sounding in tort. *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976). Under this approach, the rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. *Id.* at 580, 555 P.2d 997.

█ The *Johnson* court enunciated a two-step analysis to be employed in making this determination. First, the court must evaluate the contacts with each potentially interested state. *Id.* at 581, 555 P.2d 997. The following contacts should be considered:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* at 581, 555 P.2d 997 (citing Restatement (Second) of Conflict of Laws §§ 145). The above-listed contacts are to be evaluated according to their relative importance with respect to the particular issue. *Id.* "The approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Southwell v. Widing Transportation*, 101 Wash.2d 200, 204, 676 P.2d 477 (1984).

The second step of the analysis involves an evaluation of the interests and public policies of the concerned states. "The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved." *Southwell*, 101 Wash.2d at 204, 676 P.2d 477 (citing *Johnson*, 87 Wash.2d at 582, 555 P.2d 997.)

1. Step One: Evaluation of the Contacts with Each State

An evaluation of the contacts enunciated in *Johnson* reveals that both Washington and Idaho have a distinct relationship with this case.

(a) *The place where the injury occurred.*

In their complaint, the plaintiffs allege that as a direct result of Dr. Chinchinian's failure to identify the tissue as a phylloides-type tumor, Mary Ann Workman suffered severe injuries including "a mastectomy of the right breast, failed additional surgeries to reconstruct the right breast, additional medical bills, lost wages, severe emotional distress, pain and suffering," and Mark D. Workman has "suffered losses with respect to his marital and family relationships, all of which fall under the heading of lost consortium, including, but

not limited to, losses of society, association, companionship, comfort, economic contribution, support and household services." (Complaint, p. 5). The plaintiffs claim that the mastectomy and subsequent attempts to reconstruct the breast constitute the major physical loss suffered by Mary Ann and that it is this "injury" that caused the damage to the marital community. Because the mastectomy surgery and three of the four reconstruction surgeries were performed in Washington, the plaintiffs contend that this contact has the most significant relationship with Washington. (Plaintiffs' Reply Memorandum, Ct.Rec. 67, p. 2).

■ In contrast, the defendants argue that Idaho is the state where the plaintiffs' injuries occurred, because the mastectomy only constitutes a part of the "damages" resulting from Ms. Workman's alleged injury.[1] The "injury," according to the defendants, is the reoccurrence of the tumor. There is some plausibility to the defendants' attempt to distinguish between injury and damages. However, under certain circumstances, such as those involved in the present case, making this distinction can be difficult, if not impossible.[2] Furthermore, the defendants fail to cite any authority which would guide the court in determining whether a loss constitutes an injury or merely represents the damages recoverable for an injury.

Certainly, a more practical approach in a medical malpractice case such as this, where the injury is caused by delayed diagnosis, would be to find the residence of the plaintiff as the place of the injury. To base the determination regarding place of the injury on such adventitious circumstances as the place where the plaintiff undergoes subsequent treatment would frustrate any hope of predictability in determining choice of law problems.

Even if the court were to assume that the mastectomy and reconstruction surgeries performed in Washington constituted part of the plaintiffs' injuries in this case, these injuries are counterbalanced by the injuries occurring in Idaho. The two breast biopsies occurred in Idaho as well as one of the reconstruction surgeries. Furthermore, any injury to the marital relation necessarily occurred in Idaho since the plaintiffs' marital domicile is in Idaho. Since the plaintiffs are residents of Idaho, any emotional pain and suffering endured by Ms. Workman must be centered in Idaho.

Under the particular facts of this case, the place of injury does not tip the scale in favor of either state—at least not at this stage of the *Johnson* analysis. This contact will carry more weight in the second step of the analysis, when viewed in light of the states' conflicting local laws. (See discussion under Section I-2, *infra.*)

(b) *The place where the conduct causing the injury occurred.*

The parties agree that the tissue sample was sent to Clarkston, Washington. The parties also agree that the slides were prepared and the report was eventually transcribed in Clarkston. However, there is no allegation of negligence with respect to these specific activities. The conduct causing the injury in the present case is Dr. Chinchinian's failure to diagnose and re-

1. The court rejects the defendants' incredulous contention that to consider the mastectomy as a part of the injury in determining the choice of law issue would encourage forum shopping. It is inconceivable that a patient would choose a surgeon to perform a mastectomy solely on the basis of choice of law principles. A patient does not ordinarily think of choice of law problems when undertaking surgery.

2. Under Washington law, "where malpractice results in an injury for which a physician is liable, the risk created includes that of additional medical treatment and, perhaps, additional harm." *Lindquist v. Dengel,* 92 Wash.2d 257, 262, 595 P.2d 934 (1979). In *Lindquist,* the plaintiff sued his treating physician, claiming damages for delay in diagnosing his disease as tuberculosis and for injuries associated with a subsequent physician's more radical treatment which resulted from the delayed diagnosis (the second physician surgically removed a substantial portion of the plaintiff's lung to cure the disease). The *Lindquist* court held that a physician whose malpractice causes the patient to seek additional medical treatment cannot avoid liability for further harm caused by the additional treatment from other physicians if his own negligence was the cause of the injury which necessitated the additional treatment. *Id.* at 263, 595 P.2d 934.

port the tissue as a phylloides tumor. As to the location where this activity occurred, the parties sharply disagree.

During the early phases of discovery, Dr. Chinchinian stated that he was simply unable to recall where he was when he interpreted the slides and dictated the report. Dr. Chinchinian now recalls that he read the slides in Lewiston, Idaho and he is willing to testify to this effect.

The plaintiffs believe that Dr. Chinchinian's "sudden and belated alleged recollection" is a recent fabrication to aid the defendants' position with respect to the choice of law issue. It does seem illogical that the tissue would be sent to the Clarkston lab and prepared in that facility and then removed to the Lewiston lab for analysis. Dr. Chinchinian's belated recollection becomes even more suspect when one considers that the report supposedly dictated by the doctor in Lewiston was transcribed in Clarkston. Dr. Chinchinian has offered no explanation for his recent recollection. The court finds it unnecessary to make a factual determination regarding the place where the alleged negligent conduct occurred since the choice of law issue can be resolved on the basis of other factors, as will be discussed *infra.*

(c) *The domicil, residence, nationality, place of incorporation and place of business of the parties.*

The plaintiffs are residents and domiciliaries of Idaho and, thus, have a substantial relationship with Idaho. Notwithstanding this relationship, the plaintiffs seek application of Washington law.

The defendants, on the other hand, are residents of Washington. Yet, Dr. Chinchinian is licensed to practice pathology in both Washington and Idaho. Dr. Chinchinian is employed as a pathologist by Pathology Regional Laboratory, P.A., an Idaho corporation with laboratory facilities in Clarkston and Pullman, Washington, and Lewiston, Idaho. Dr. Chinchinian apparently divides his practice between the Washington and Idaho facilities. Because his practice serves patients and hospitals in both Idaho and Washington, he and the marital community have a significant relationship with each state.

As discussed below, the significance of this contact will become more evident when considered in light of the conflicts between Idaho and Washington law and the policies furthered by the respective laws.

(d) *The place where the relationship, if any, between the parties is centered.*

The defendants assert that the relationship between the parties is centered in Idaho. (Defendants' Memo. in Support of Application of Idaho Law, Ct.Rec. 57, p. 4). The only legitimate basis given for the defendants' assertion is the fact that Ms. Workman's first biopsy was performed in Moscow, Idaho, and the tissue sample excised from this biopsy was the one sent to Dr. Chinchinian for analysis.

The plaintiffs maintain that the relationship between the parties is centered in Washington since most, if not all activities associated with the provision of the pathology report were done in Clarkston, Washington. (Plaintiffs' Reply, Ct.Rec. 67, p. 3).

Although the biopsy was performed in Idaho, this factor is of little relevance since it was conducted by a physician other than Dr. Chinchinian. The relevant relationship between the "parties" is the physician-client relationship between Dr. Chinchinian and Ms. Workman. This relationship began in Clarkston, Washington, the place where the tissue samples were sent for preparation and analysis by Dr. Chinchinian. There is no question that Clarkston was the place where the slides were prepared and the report was transcribed and sent.

When the above contacts are considered in the abstract, without reference to the laws of either state, it is evident that both Idaho and Washington have significant contacts with the parties involved herein. Consequently, it is necessary to evaluate the states' conflicting local laws and make the choice of law determination on the basis of the weightier policy interests of those states.

2. Step Two: Evaluation of the Interests and Public Policies of Each State

(a) *Limitation on Damages*

██ Washington allows a tort victim full recovery without limitation on damages. The primary purpose of this "no-cap" policy is to deter wrongful conduct. *Johnson,* 87 Wash.2d at 583, 555 P.2d 997 ("the sting of unlimited recovery ... more effectively penalize[s] the culpable defendant and deter[s] it and others similarly situated from such future conduct."). Because the defendant is a resident of Washington and is licensed to practice medicine in Washington as well as Idaho, application of Washington's full compensation law will clearly advance Washington's deterrent policy.

On the other hand, Idaho's cap on damages serves to protect defendants from excessive damages, thereby reducing insurance costs. The Washington Supreme Court has held that a state's interest in protecting defendants from excessive financial burdens is primarily a local concern. *Johnson,* 87 Wash.2d at 582–83, 555 P.2d 997. Clearly, the object of Idaho's limitation statute is to protect Idaho defendants and their insurance carriers, not Washington residents and their insurance carriers. In this case the defendants are Washington residents and the plaintiffs are Idaho residents. Application of the Idaho damage limitation will not protect Idaho residents, it will merely limit the damages recoverable by its own residents. Thus, Idaho has little interest in applying its damage limitation to a nonresident defendant being sued in his own state.

Although the cap on damages also promotes Idaho's strong interest in assuring the availability of health care at reasonable costs to its citizens,[3] application of the limitation under the facts of the present case would not likely advance that purpose. Since Dr. Chinchinian conducts a substantial part of his practice in Washington he is already subject to Washington's full recovery law. The record does not establish that the conflict in the states' limitation laws has affected the cost of Dr. Chinchinian's insurance premiums or enabled him to reduce his fees for Idaho residents.[4]

Under the facts of this case, Washington's interests in fully compensating tort victims and deterring tortious conduct substantially outweigh Idaho's interest in limiting damage claims. Consequently, Washington law shall be applied to this issue and Idaho's damage limitation will be ignored.

(b) *Collateral Source Rules*

██ Both states have an interest in having their collateral source statute applied under the facts of the present case. However, the parties have not addressed any significant differences between the two states' collateral source statutes. Idaho's collateral source statute reads as follows:

> In any action for personal injury or property damage, a judgement may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage, whether from private, group or governmental sources, whether contributory or noncontributory. For the purposes of this section, collateral sources shall not include benefit paid under federal programs which by law must seek subrogation, ... benefits paid by a service corporation organized under chapter 34, title 41, Idaho Code, and benefits paid which are recoverable under subrogation rights created under Idaho law or by contract. Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. Such award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources.

Idaho Code § 6–1606. Washington's collateral source statute, RCW 7.70.080, differs from the Idaho statute in that it allows

---

**3.** Idaho's damage limitation is not confined to medical malpractice cases but applies to all personal injury claims however caused. Idaho Code § 6–1603(1).

**4.** Dr. Chinchinian has provided no information to the court regarding his insurance carrier or the nature of his insurance policy.

evidence of collateral compensation to be presented as evidence to the trier of fact rather than to the court. Washington's statute also provides that "assets of the patient, his representative, or his immediate family, or insurance purchased with such assets"[5] are excepted from the statute and are inadmissible. RCW 7.70.080.

Collateral source rules are intended to protect defendants by preventing plaintiffs from receiving a double recovery. Thus, the state where the defendant resides will have the strongest interest in seeing its collateral source rule applied. For this reason, Washington's collateral source statute will be applied to this case.

### (c) *Comparative Fault*

■ Both Washington and Idaho have comparative fault provisions in the statutory tort recovery schemes. Since the plaintiffs' negligence does not appear to be an obvious issue in this case, Idaho's interest in this issue is not paramount. In sharp contrast, Washington has a strong interest in seeing its comparative negligence scheme applied because the defendant, a Washington resident, is alleging that the negligence of other health care providers was the cause of the plaintiffs' injuries.

Under Washington's scheme, the trier of fact must "determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages" and judgment against the defendant is to be entered in an amount which represents his proportionate share of the claimant's total damages. RCW 4.22.070. Application of this rule to the present facts would promote Washington's interest since it may limit the liability of one of its residents and thereby contribute to the reduction of insurance costs.

Surprisingly, the defendants argue that Washington has no interest in having its comparative fault system applied to the present action because "[i]t is not in Washington's interest to have liability imposed upon one of its residents, when the comparative fault system of a sister state would not impose liability. Particularly, when the

Plaintiffs are not residents of Washington." (Ct.Rec. 57, p. 8). The defendants fail to explain why they would not be liable under Idaho's comparative fault system. They cite no authority which would lend support to their argument. The court finds that application of Washington law on this issue will clearly advance the purpose sought to be achieved by that legislation and will in no way hinder the interests and policies of Idaho. Therefore, Washington law will govern this issue.

### (d) *Standard of Care*

■ Washington and Idaho recognize different standards of care for medical professionals. Idaho employs the "local standard rule" to determine whether a physician has exercised the appropriate degree of care in any given case. This standard requires that Idaho health care providers exercise the same degree of care and skill of similarly trained and qualified providers of the same class in the same community. *Dekker v. Magic Valley Regional Medical Center,* 115 Idaho 332, 766 P.2d 1213 (1988). The term "community," as used in the act, "refers to that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." Idaho Code § 6–1012.

The rationale for the local standard rule, a product of early American frontier days, was to protect country doctors who did not have the facilities, contacts, or opportunities for learning and experience afforded by large cities. *Douglas v. Bussabarger,* 73 Wash.2d 476, 438 P.2d 829 (1968) (citing W. Prosser, Torts § 32, at 166 (3d ed. 1964)). The object of the Idaho legislation is to assure that a liability insurance market be available to physicians, ... and that the same be available at reasonable cost, thus assuring the availability of health care to persons in the state." (S.L.1976, ch. 277) The Idaho legislature believes that this objective can be achieved by requiring direct proof of departure from a community standard of practice and thereby limiting the

---

**5.** RCW 7.70.080 provides that "insurance bargained for or provided on behalf of an employ- ee shall be considered insurance purchased with the assets of the employee."

liability exposure of health care providers. (S.L.1976, ch. 277).

Recognizing that the realities of contemporary medical practice eliminate the need for the locality rule, the Washington Supreme Court abandoned the rule and adopted a general professional standard in *Pederson v. Dumouchel,* 72 Wash.2d 73, 431 P.2d 973 (1967).

> Modern means of transportation permit country doctors to attend up-to-date medical seminars; the general circulation of medical journals makes new developments readily available to them and they can easily and quickly communicate with the most modern and up-to-date medical centers in cities throughout the United States. As has been pointed out, today's rural practitioner can and does give and receive advice transmitted thousands of miles over the telephone, and he is expected to keep himself apprised of recent developments as they are regularly published in medical journals.

*Douglas,* 73 Wash.2d at 489, 438 P.2d 829. The Washington court criticized the locality rule because it unfairly allowed rural and small-town doctors to enjoy advantages not given by the law to any other class of rural and small-town tort defendants. *Id.* at 490, 438 P.2d 829. Emphasizing the unfairness of the rule, the court noted that small-town doctors do not admit to patients seeking their services that they can be a little more careless and act with less responsibility than doctors in larger cities. *Id.*

The standard of care currently required of medical practitioners in Washington is "that degree of care and skill which is expected of the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Pederson,* 72 Wash.2d at 79, 431 P.2d 973. Thus, in Washington, the locality rule "has no present-day vitality except that it may be considered as *one* of the elements to determine the degree of care and skill which is to be expected of the average practitioner of the class to which he belongs." *Pederson,* 73 Wash.2d at 79, 431 P.2d 973.

Washington and Idaho both have strong interests in regulating the conduct of doctors licensed to practice in their state by establishing an appropriate standard of care. If, in fact, the defendant read and interpreted the slides in the Lewiston laboratory facility, Washington would not have a strong interest in having its standard of care legislation applied since the plaintiff is a resident of Idaho and the treatment was performed in Idaho. Since the primary purpose of a standard of care rule is to deter misconduct, the state where the conduct took place will most likely be the state of dominant interest and thus that of most significant relationship. Restatement (Second) of Conflict of Laws § 145, comment c, at 416 (1971); *Barr v. Interbay Citizens Bank,* 96 Wash.2d 692, 698, 635 P.2d 441 (1981). Applying the Idaho standard under these facts would not adversely affect the policies Washington seeks to promote. Generally speaking, Washington has no interest in seeing its standard applied to doctors practicing outside the state.

Conversely, if the slides were read by Dr. Chinchinian in the Clarkston facility, Washington would have the dominant interest in having its standard of care rule applied. Unfortunately, the underlying facts are not clear. Either way, the court cannot ignore the fact that Dr. Chinchinian resides in Washington and operates out of the Clarkston facility as well as the Lewiston facility. This fact is critical to the standard of care issue, especially when one considers that the tissue sample in question was sent for analysis to the Clarkston facility, not the Lewiston facility. Certainly Washington has a vital interest in regulating the activity of corporations that operate within its boundaries as well as the conduct of the physicians who are employed by those corporations. Moreover, it should come as no surprise to Dr. Chinchinian that while rendering his opinion on a sample sent to the Clarkston laboratory he will be subject to the standard of care established by Washington.

For the same reasons discussed in the preceding section regarding limitation of damages, application of Washington's standard of care to the particular facts of this case will not undermine Idaho's interest in

reducing insurance costs for its health care providers. Indeed, it is the considered opinion of this court that Idaho's locality rule is so severely antiquated, given today's technologically advanced society, that its application here would only serve to frustrate the fair adjudication of the plaintiffs' claims. Thus, the court shall apply Washington's standard of care rules to this case.

For the foregoing reasons, IT IS HEREBY ORDERED that Washington substantive law shall govern all issues relating to liability and damages in this case.

## II. *Plaintiffs' Motion in Limine.*

Plaintiffs move the court for an order prohibiting the introduction of testimony at trial regarding (1) alternative treatments and their expected outcomes and (2) alleged medical malpractice or inappropriate treatment by Drs. Spain, Moe, Ellis and Austin–Seymour. The plaintiffs argue that this evidence is irrelevant because the subsequent medical malpractice by other doctors does not relieve the initial tort-feasor of liability. In support of their argument, the plaintiffs cite *Lindquist v. Dengel*, 92 Wash.2d 257, 595 P.2d 934 (1979) and *Hickman v. Fraternal Order of Eagles*, 114 Idaho 545, 758 P.2d 704 (1988).

The plaintiffs' reliance on *Lindquist* is problematic for two reasons. First, the issue addressed in *Lindquist* did not concern the admissibility of this type of evidence. Indeed, the defendant in that case was permitted to introduce testimony, by means of an expert witness, establishing that the subsequent surgery performed by another doctor was not an appropriate treatment for the plaintiff's condition. *Lindquist*, 92 Wash.2d at 260, 595 P.2d 934. The issue in *Lindquist* was whether, given this evidence, the trial court erred by rejecting the plaintiff's proffered instruction regarding the basic rule of liability for harm resulting from treatment of injuries caused by a tort-feasor's negligent conduct. Thus, the holding in *Lindquist* does not support the plaintiffs' argument that the evidence is irrelevant and inadmissible in the instant suit.

The second problem with plaintiffs' reliance on *Lindquist* is the fact that *Lindquist* was decided before the Tort Reform Act of 1986. RCW 4.22.070, which was enacted as part of the Act, in relevant part states:

> In *all* actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to *every* entity which caused the claimant's damages, including the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities immune from liability to the claimant and entities with any other individual defense against the claimant.

RCW 4.22.070 (emphasis added). Nothing in the legislative history of the act indicates that this section was not intended to apply to medical malpractice actions. Hence, evidence of negligence by subsequent practitioners is relevant and admissible. Accordingly, IT IS FURTHER ORDERED that the plaintiffs' motion in limine is DENIED to this extent.

With respect to evidence of alternative treatments, the court will allow this evidence only to the extent that it may assist the trier of fact in determining the negligence of the other treating physicians. It will not be admitted to show that Ms. Workman failed to mitigate damages. A patient does not act unreasonably by following the recommendation of her physicians, especially when those physicians are specialists in their fields. Thus, IT IS FURTHER ORDERED that any evidence intimating that Ms. Workman acted unreasonably by choosing a course of treatment recommended to her by her doctors is INADMISSIBLE.

The defendants are explicitly WARNED that the court will enforce LR 43 and limit expert testimony to two witnesses on any issue. The defendants will be required to make an offer of proof to establish whether the numerous pathologists they intend to call will actually testify regarding different aspects of the standard of care issue or from different perspectives.

III. *Plaintiffs' Motion to Strike Dr. Chinchinian's Deposition Correction Sheet as Untimely.*

On November 5, 1991, plaintiffs' counsel took the deposition of Dr. Chinchinian. During this deposition the following colloquy took place between Mr. Fancher and Dr. Chinchinian:

> Q: Do you agree that it is a phylloide type tumor? Is that what you saw when you read the slide?
>
> A: Yes.

(Depo. of Dr. Chinchinian, p. 55, 11. 14–17). On or about November 20, 1991, M & M Court Reporting Service sent a copy of the deposition plus the Change Sheet and Original Signature Page to defendants' counsel. Counsel was directed to instruct Dr. Chinchinian to review the deposition, record any changes on the Change Sheet, sign the certificate before a notary public, and return the Change Sheet and signature page to plaintiffs' counsel on or before December 20, 1991. Defense counsel was warned that failure to comply by said date would be deemed a waiver of right to read and sign. (Plaintiffs' Memo. in Support of Motion to Strike, Ct.Rec. 28, Ex. A).

Dr. Chinchinian made corrections to the deposition and signed the Certificate before a notary public on January 9, 1992. Dr. Chinchinian changed his answer to the above question to read that he agrees, in retrospect, that the specimen was a phylloides type tumor but that at the time he initially analyzed the slides he saw a fibroadenoma, not a phylloides type tumor. This correction, which essentially introduced a new issue into the case, was signed one day prior to the discovery cutoff date.

Counsel for the plaintiffs state that he received the correction sheet on January 16, 1992, several days after the discovery cutoff. Plaintiffs maintain that the only notice they received indicating that Dr. Chinchinian would claim that he did not recognize the tumor as a phylloides type came from this untimely correction sheet and some references in Defendants' Supplemental Responses to Interrogatories received by facsimile transmission on January 10, 1992, the discovery cutoff date.

The plaintiffs move to strike the correction sheet as untimely, claiming they are prejudiced by this late correction because the discovery deadline bars them from conducting further discovery on this issue. (Plaintiffs' Reply Memo., Ct.Rec. 70, p. 5).

In response, the defendants argue that Rule 30(e) of the Federal Rules of Civil Procedure does not prescribe a time limit for making corrections to depositions. The defendants further argue that the plaintiffs are not unfairly prejudiced by the corrections since the questioning technique of plaintiffs' counsel necessitated the changes. (Ct.Rec. 59). The court disagrees with both of the defendants' arguments.

Rule 30(e) provides that the deposition transcript shall be submitted to the witness for examination and that any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer before whom the deposition was taken with a statement of the reasons given by the witness for making them. If the deposition is not signed by the witness within 30 days of its submission to the witness, the officer is to sign it and state on the record the reason for the witness' failure to do so. After the officer has signed the deposition, it may be used as fully as though signed by the witness.

Here, Dr. Chinchinian signed the deposition but failed to do so within the thirty day time period. His delay in making the necessary corrections and signing the deposition is prejudicial to the plaintiffs because he changed his answer on a material issue of the case. A review of the entire record indicates that the plaintiffs had no prior notice that Dr. Chinchinian would claim that he did not recognize the tumor as a phylloides type when he first examined the slides. Because the plaintiffs reasonably believed that the case revolved around an issue of terminology rather than interpretation, they did not inquire as to the procedures Dr. Chinchinian followed in analyzing the slides or the cell structures he relied upon in making his diagnosis.

To allow the correction to stand would merely serve to compound the prejudice

already suffered by the plaintiffs. A continuation of the trial date would be necessary to provide the plaintiffs with an opportunity to propound further interrogatories and to consult and retain another expert to meet this issue. Granted, this is a possible alternative but, as a practical matter, a continuance at this late stage of the litigation would be greatly prejudicial to the plaintiffs.

Moreover, the court is deeply troubled by the circumstances under which the late corrections were made. The defendants' complete turnabout in position during the last hours of discovery is strongly suggestive of a deliberate effort by the doctor to take advantage of the federal and local rules applicable to this case. For these reasons, IT IS ORDERED that the plaintiffs' motion to strike Dr. Chinchinian's deposition correction sheet is GRANTED.

By striking the corrections, it is not the court's intent to preclude the doctor from explaining his deposition testimony at trial. However, the court will not permit him to explain his answer by using the correction sheet as a prior consistent statement.

### IV. Plaintiffs' Motion to Compel Completion of Answers to Interrogatories (Ct.Rec. 30).

The plaintiffs served interrogatories on the defendants requesting that the defendants state the identity and address of all expert witnesses, the subject matter on which they are expected to testify, and the substance of the facts and opinions to which the experts are expected to testify. The defendants responded by submitting a brief summary of the expected testimony of each expert witness. The plaintiffs contend that the defendants' answers fail to comply with Rule 26(b)(4)(A) in that "not all of the material opinions of the expert witnesses were specifically stated or disclosed, nor was the basis for such opinions disclosed, but the defendants merely identified an area in which the expert would be expressing opinions." (Plaintiffs' Memo. in Support of Motion to Compel, p. 8). Thus, the plaintiffs move the court for an order compelling the defendants to answer the interrogatories more thoroughly.

The district court has broad discretion in managing pretrial discovery, including decisions regarding the scope of discovery. *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179 (1st Cir.1989).

> While the court should favor full and fair disclosure, it has reasonable discretion to, and should through protective orders and other measures, prevent discovery from becoming unjustifiably burdensome or unreasonably complex or technical in the image of common law pleading and contrary to the spirit of the Federal Rules of Civil Procedure.

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2176 (quoting *Pilling v. General Motors Corp.*, 45 F.R.D. 366, 369 (D.C.Utah 1968).

Pursuant to Rule 26(b)(4)(A), interrogatories seeking discovery of expert information must be confined to requests for (1) the identity of each person whom the other party expects to call as an expert witness at trial, (2) the subject matter on which the expert is expected to testify, (3) the substance of the facts and opinions to which the expert is expected to testify, and (4) a summary of the grounds for each opinion. Fed.R.Civ.P. 26(b)(4)(A)(i). If a party fails to answer the interrogatories or does so incompletely or evasively, the discovering party may move for an order compelling an answer pursuant to Rule 37(a). However, if additional information is needed after an answer in compliance with Rule 26(b)(4) has been provided, the party seeking the information must move the court for an order permitting discovery by other means, usually a deposition of the expert. Fed. R.Civ.P. 26(b)(4)(A)(ii).

In determining whether a party has satisfied his responsibility to provide complete answers to interrogatories, the court must keep in mind the general purpose of the interrogatories authorized under Rule 26(b)(4)(A)(i). "Essentially, the inquiries are designed to afford the questioner notice of the basic arguments the responding litigant intends to press at trial." *Hockley v. Zent, Inc.*, 89 F.R.D. 26 (M.D.Pa.1980).

Thus, a response is adequate if it provides sufficient notice of the theories under which the answering party plans to proceed. *Id.*

In *Hockley*, a personal injury action arising out of an automobile accident, the defendant truck driver filed a third-party complaint against the manufacturer of the truck's braking system. The manufacturer served an interrogatory upon the defendant asking for the facts and opinions to which the defendant's experts would testify regarding the manufacturer's negligence, and for a summary of the grounds for each opinion. In response, the defendant referred the manufacturer to the defendant's answer to another interrogatory which answer stated that a failure occurred in the braking system constructed by the manufacturer and that the system was equipped with inadequate fail safe devices, disconnect features and devices to warn of system failure. The *Hockley* court held that this answer was sufficient under Rule 26(b)(4)(A)(i) since it clearly indicated the theory that the defendant would assert against the manufacturer.

Similarly, in *Wilson v. Resnick*, 51 F.R.D. 510 (E.D.Pa.1970), the plaintiff in a medical malpractice action served upon the defendant interrogatories essentially identical to those involved in the present case. The defendant in *Wilson* responded to the interrogatories by providing the identity of the expert and stating "that he would testify on the question of whether plaintiff was treated in accordance with good, sound medical practice; that as to plaintiff's condition, it appears that reinnervation is occurring; that any residual complaint would be more annoying than anything else; that there is no functional disability; that the care and treatment by Dr. Resnick was in accordance with good, sound medical practice." *Id.* at 511. The district court in *Wilson* found that the defendant's answer was sufficient because it adequately informed the plaintiff as to the nature and substance of the expert's testimony. *Id.*

The cases relied upon by the plaintiffs are distinguishable. In *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449 (2d Cir.1975),

the defendant's answers to Rule 26(b)(4)(A) interrogatories entirely omitted reference to a theory which the defendant later sought to establish at trial. Likewise, in *Holiday Inns, Inc. v. Robertshaw Controls Company*, 560 F.2d 856 (7th Cir. 1977), the district court excluded evidence pertaining to an issue the plaintiff's sought to pursue because the plaintiff's failed to identify that particular theory as a basis of liability in its answers to the defendant's interrogatories.

█ In the instant case, the defendants have provided the plaintiffs with sufficient notice of the theories under which they plan to proceed. The defendants' answers indicate they will argue that Dr. Chinchinian's review and reporting of the tissue specimen complied with the applicable standard of care, that the diagnosis of phylloides type fibroadenoma could not be made based upon the specimen in this case, that the standard of care did not require that this classification be reported, that the nomenclature used by Dr. Chinchinian in his pathology report complied with the standard of care, that the treatment of choice for this type of tumor was a wide excision and the mastectomy was not necessary, and that Ms. Workman would have required a second biopsy and further surgery in any event since the original biopsy was incisional rather than excisional.

Based on the above, the court finds that the plaintiffs have received proper notice within the intent of Rule 26(b)(4)(A)(i). Therefore, IT IS ORDERED that the plaintiffs' motion to compel completion of answers to interrogatories is DENIED.

V. *Defendants' Alternative Motion to Compel Completion of Answers to Interrogatories (In the Event the Court Grants Plaintiffs' Motion to Compel Completion of Answers to Interrogatories).*

The defendants filed this motion on January 27, 1992. The plaintiffs' responded by submitting an Augmented Disclosure of Expert Witnesses on February 7, 1992. The response complies with the intent of Rule 26(b)(4)(A)(i) as discussed in section

IV above.  Accordingly, IT IS ORDERED that the defendants' motion is DENIED AS MOOT.

VI. *Plaintiffs' Motion to Determine Sufficiency of Defendants' Objections and Answers to Plaintiffs' Requests for Admission (Ct.Rec. 39).*

After the tissue sample from Ms. Workman's second biopsy was diagnosed by Dr. Wright as a phylloides type tumor, the pathology slides from the first biopsy were reanalyzed.  Dr. Wright then communicated his findings to Dr. Chinchinian.  In response, Dr. Chinchinian wrote a letter to Dr. Wright, explaining that his diagnosis of "fibroadenoma" was consistent with terminology currently in vogue at Stanford University.

> Stanford University consultants do not use the term "cystosarcoma phylloides" unless it is the malignant form.  I conform to their use of "fibroadenoma" and further modify this as necessary....  We reserve our detailed descriptions for malignant neoplasms—also molecular biology analysis.

(Dr. Chinchinian's letter, Ct.Rec. 41, Ex. B).  Prior to the commencement of this action, counsel for the plaintiffs sent a letter to Dr. Richard Kempson, Professor of Pathology at Stanford University Medical Center, requesting information regarding the terminology used by Stanford physicians to describe fibroadenomatous lesions of the breast.  Dr. Kempson responded to this request by letter dated December 14, 1990.  Subsequent to the sending of the letter, the defendants retained Dr. Kempson as an expert witness in this case.  It is Dr. Kempson's letter to plaintiffs' counsel that is the subject of plaintiffs' requests for admission.

The purpose of Rule 36(a) of the Federal Rules of Civil Procedure, which authorizes the service of requests for admission, is to expedite trial by eliminating the necessity of proving undisputed issues and thus narrowing the range of issues for trial.  *Asea Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242 (9th Cir.1981).[6]  Rule 36 provides that a party may serve upon any other party a written request for the admission of the truth of any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact.  As a general rule, matters within the scope of Rule 26(b) include "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...."  Fed.R.Civ.P. 26.  However, subsection (4) of Rule 26(b) carves out an exception to the general rule by limiting the discovery of facts known and opinions held by experts where such facts or opinions are acquired or developed in anticipation of litigation or for trial.

Under subsection 26(b)(4), a party may obtain discovery of facts known and opinions held by experts who will testify at trial only through the use of interrogatories propounded to the other party, unless the court, upon motion, orders further discovery by other means.  Fed.R.Civ.P. 26(b)(4)(A).  The information sought to be obtained through the interrogatories must be confined to the subject matter on which the expert is expected to testify, the substance of the facts and opinions that will be expressed and a summary of the grounds for each opinion.  (See discussion in Section IV, *supra*).

The plaintiffs' requests for admission and the defendants' objections thereto are set out in both the plaintiffs' memorandum in support of the motion and the defendants' memorandum in opposition to the motion (Ct.Rec. 24, 25).  To briefly summarize, Request No. 2 asked the defendants to admit that Dr. Kempson's letter of December 14, 1990, accurately reflected his views as of that time regarding the appropriate terminology to be used to describe fibroadenomatous lesions; Requests Nos. 3 and 4

---

6. The Advisory Committee Note to the 1970 amendments of the rule states:
   Rule 36 serves two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.

essentially quoted the contents of the letter and asked the defendants to admit the same; and Request No. 5 asked the defendants to admit that Dr. Chinchinian has no knowledge of any occasion where Dr. Kempson or his associates reported to Dr. Chinchinian on a phylloides tumor without using certain diagnostic terms listed in the request. The defendants objected to these various requests on multiple grounds.[7] Without waiving these objections, the defendants denied requests Nos. 2 and 5, and admitted that Requests Nos. 3 and 4 were basically quotes from Dr. Kempson's letter.

■■■ The defendants' objections are valid. As to Request No. 5, Rule 36 is not to be used as a discovery device and if the plaintiffs wish to discover what the facts are they should resort to other discovery rules rather than Rule 36. *See* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2253 (1970). Moreover, the phrasing of the request in negative terms does create an element of ambiguity. Nevertheless, the defendants denied the request and a denial is a sufficient response to a request for admission under Rule 36.

■■■ As to Request Nos. 2, 3, and 4, the admissions the plaintiffs seek to obtain do not fall within the purview of Rule 36. The admissions will not eliminate any issues from this trial because Dr. Kempson's policies and past practices in California are not relevant to the standard of care in Idaho or Washington. Since the defendants have admitted that the letter is true and accurate, the only purpose served by the admission would be to bolster the effect of the letter in attacking Dr. Kempson's credibility. This was not the intent of the drafters of the rule. Accordingly, IT IS ORDERED that the defendants' objections to the requests are SUSTAINED.

**7.** The defendants objected to all four requests on the ground that the requests are ambiguous, unclear, and do not set forth the totality of the facts and circumstances of a patient. With respect to Requests Nos. 2, 3, and 4, the defendants objected on the grounds that the requests

## VII. *Plaintiffs' Motion for Preservation Depositions of Drs. Leff, Middleton and Sasser (Ct.Rec. 62).*

■■■ The plaintiffs desire to take a videotaped deposition of the above expert witnesses for use at trial in lieu of calling the witnesses to testify. The plaintiffs contend that the direct testimony of these witnesses will be completed in one hour or less. By taking a videotaped deposition, the plaintiffs hope to avoid problems with trial scheduling which will most likely necessitate the doctors' prolonged presence in Spokane and their corresponding high fees. Plaintiffs are also concerned about the attendance of Dr. Middleton who lives in Bellevue, outside the subpoena power of the court.

The defendants' main objection to the motion is its untimeliness. The plaintiffs' motion was not filed until February 7, 1992, nearly one month past the discovery cutoff date. Moreover, the deadline for filing and disposing of motions was February 14, 1992.

Plaintiffs have a legitimate concern about the high cost of keeping expert witnesses "on call" to testify. These costs become prohibitive when a party seeks to have a medical practitioner from the Seattle area testify on the east side of the state, outside the subpoena power of the court. Allowing parties to take videotaped depositions for use at trial would help to curb trial costs significantly and thereby reduce the tremendous financial strain so often suffered by litigants. Moreover, there remains the unavoidable fact that after counsel has spent numerous hours consulting with a physician or surgeon during trial preparation, the physician or surgeon may be summoned for a medical emergency on the day of trial. Having the expert's testimony on videotape will eliminate this problem. Indeed, the court looks forward to the day when most expert testimony will be conducted in this fashion.

do not fall within the purview of Rule 36 since discovery of expert opinions is governed by Rule 26. The defendants objected to Request No. 5 on the ground that the form of the request was ambiguous "because of the negatives."

Good cause having been shown, IT IS ORDERED that the plaintiffs' motion for leave to take videotaped preservation depositions of Drs. Middleton, Leff and Sasser is GRANTED upon the condition that the plaintiffs pay the cost of one defense lawyer's attendance at each deposition. Counsel for the defendants shall furnish to the plaintiffs a written itemization of the expected costs for one lawyer's attendance, including the attorney fees they would charge and the expected travel expenses. This itemization shall be served on the plaintiffs, and a copy filed with the court, on or before March 11, 1992. If the plaintiffs choose to proceed with the videotaped depositions, they shall do so prior to March 20, 1992.

## SUMMARY OF DISPOSITIONS

For the reasons fully set forth above, IT IS HEREBY ORDERED:

(1) The plaintiffs' motion regarding choice of law (Ct.Rec. 34) is GRANTED, Washington substantive law shall govern all issues relating to liability and damages in this case.

(2) The plaintiffs' motion in limine (Ct. Rec. 22) is DENIED IN PART and GRANTED IN PART. The plaintiffs' motion in limine is DENIED to the extent it seeks to exclude evidence of negligence by subsequent practitioners. This evidence is relevant and admissible in light of the Washington's comparative negligence statute, RCW 4.22.070. However, with respect to evidence intimating that Ms. Workman acted unreasonably by choosing a course of treatment recommended by her doctors, the plaintiffs' motion in limine is GRANTED.

(3) The plaintiffs' motion to strike Dr. Chinchinian's deposition correction sheet (Ct.Rec. 26) is GRANTED.

(4) The plaintiffs' motion to compel completion of answers to interrogatories (Ct. Rec. 30) is DENIED.

(5) The defendants' alternative motion to compel completion of answers to interrogatories (Ct.Rec. 46) is DENIED AS MOOT.

(6) The defendants' objections to the plaintiffs' requests for admission are SUSTAINED.

(7) The plaintiffs' motion for leave to take videotaped preservation depositions of Drs. Middleton, Leff and Sasser (Ct.Rec. 62) is GRANTED.

IT IS SO ORDERED.