# Chrysler Corporation v. Debra Makovec, Administratrix of the Estate of Donald E. Makovec

[596 A.2d 1284]

No. 90-551

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed June 21, 1991

*William H. Quinn* and *Michael J. Gannon* of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Petitioner.

*Robert A. Bloomer* of *Bloomer & Bloomer, P.C.*, Rutland, and *Phyllis R. McCoy* of *Hull, Webber, Reis & Canney*, Rutland, for Respondent.

**Dooley, J.** Defendant Chrysler Corporation seeks extraordinary relief from the Rutland Superior Court's refusal to close discovery and grant summary judgment in two product liability actions that have been pending for over five years. We grant the petition in part.

Both actions arise out of a two-car collision on June 10, 1983, in which plaintiff's husband, the operator of one of the vehicles, was killed. The police report concluded that the decedent had lost control of his car while attempting to pass another vehicle at excessive speed in a no-passing section of Route 7 near Rutland. The complaint in the first action, filed in June of 1985, alleged that the braking system of the car failed to function properly and sought wrongful death damages. The second action, commenced in April of 1986, made the same liability allegations and sought damages for loss of consortium.

In July of 1985, plaintiff responded to defendant's interrogatories by stating that her expert witness was expected to testify that a failure of the braking system caused her husband to lose control of his car. In October 1987, pursuant to a court order, defendant was permitted to depose the expert, who was unable to testify that a defect in the vehicle caused the accident. Plaintiff produced no other expert testimony to support her claim of a defective vehicle until January 8, 1991, approximately three weeks after a hearing before this Court on defendant's petition for extraordinary relief, when, in response to defendant's July 1985 interrogatories, she presented a two-page letter from an accident reconstructionist. The report stated that the reconstructionist and a mechanic had examined the decedent's car on January 3, 1991 and determined that malfunctioning brakes and loss of steering had caused the accident.

Between 1985 and 1989 plaintiff made several broad discovery requests related to the brakes and rear axles of the model of car driven by the decedent. Over defendant's objections, plaintiff was permitted to discover "all of the material presently in the possession and control of defendant which is in any way related to the braking system, rear axle or any component part

thereof of any motor vehicle manufactured by defendant with a rear axle and/or braking system similar or identical to that of [the model driven by the decedent]." Defendant delivered to plaintiff approximately ten boxes of documents and five boxes of customer complaints regarding brakes and rear axles. After the court denied plaintiff's motion to depose Lee Iacocca, the chairman of the board of defendant corporation, Mr. Iacocca responded to written interrogatories concerning comments he had made in his autobiography about the quality of automobiles manufactured by defendant. Further, while the court refused to allow plaintiff to depose a consultant of defendant who was not identified as an expected witness or to seek discovery in other cases filed in Rutland Superior Court against defendant, plaintiff did depose other potential witnesses, including the investigating officer and eyewitnesses to the accident.

In June of 1989, more than four years after she commenced the action, plaintiff propounded a new set of interrogatories seeking information about "tie rods, tie-rod ends or any other parts of the steering apparatus of [the model driven by the decedent] during the model years 1977 through 1988." Defendant objected and filed a motion to close discovery, arguing that the requests imposed new and unreasonably burdensome discovery over four years after discovery had begun. On October 31, 1989, the court granted defendant's motion in part, stating

> The Defendant, Chrysler Corporation, has moved for a protective order pursuant to *V.R.C.P. 26(b)(1)(c)* to the effect that the discovery in this case be closed.
>
> Until recently, the Plaintiff has pursued her product's liability claim on the theory that the braking system of the vehicle decedent was driving was defective. Over a considerable period of time, broad, time-consuming discovery has been conducted. More recently, the Plaintiff has shifted her focus to the tie rods of the vehicle. She now seeks, in effect, to initiate an entirely new wave of discovery which promises to be as time-consuming and expensive as the first. Although the Defendant's motion is tempting, such motions are not favored. See generally, 8 Wright and Miller, *Federal Practice and Procedure*, sec. 2037. If discovery were terminated at this time, the case would effectively be terminated

without allowing the Plaintiff an opportunity to explore a theory of liability which may, or may not, have merit.

On the other hand, the Defendant should not be required to once again repeat with regard to tie-rods the exercise it went through previously with regard to braking systems. A protective order is appropriate though not as broad in scope as Defendant suggests.

Accordingly, the Defendant's obligation with regard to the pending discovery is limited to answering questions and identifying the documents required by the discovery request and providing the Plaintiff with reasonable access to such documents at Detroit, Michigan or such other places where the records might be stored. *Bowman v. General Motors Corp.*, 64 F.R.D. 62 (D.C. Pa. 1974).

In December of 1989 defendant responded to plaintiff's tie-rod interrogatories, and the next month the court denied plaintiff's motion to compel more complete answers. Plaintiff then sought to depose the corporate executive who had signed the answers to the interrogatories. Defendant objected to the deposition and filed a motion for a protective order in February of 1990. Later that month, the court heard defendant's motion for summary judgment, which had been filed four months earlier. In response to that motion, the court acknowledged that "the Plaintiff has failed to produce evidence sufficient to avoid the motion for summary judgment," but it refused to grant summary judgment because, unlike in *Poplaski v. Lamphere*, 152 Vt. 251, 254–55, 565 A.2d 1326, 1328–29 (1989), no discovery deadlines had been set, and plaintiff "is entitled to a fair opportunity to complete her discovery as to the tie rods." The court then ordered that "discovery as to the tie rods shall be completed on or before May 1, 1990," and that "[n]o other discovery may be initiated without the prior approval of the Court."

The court's deadline passed, and on May 11, two days after defendant filed a renewed summary judgment motion, a hearing was held on plaintiff's motion to depose the Chrysler executive who had signed the answers to the tie-rod interrogatories. The court ruled that on or before June 15 defendant had to make available for deposition a witness knowledgeable about changes in tie-rod sizes for the model car driven by plaintiff's husband. The court specifically stated that defendant need not

make available the executive who signed the answers to the interrogatories unless that executive was personally knowledgeable on the subject matter. Defendant made an appropriate witness available, but plaintiff refused to take the deposition because the proposed witness was not the executive that she sought to depose. The court denied plaintiff's subsequent motion for clarification, stating that "Plaintiff has failed to avail itself of the court's prior indulgence of its requests."

Meanwhile, defendant's renewed motion for summary judgment was set to be heard on November 16. On November 13, three days before the hearing, a notice of appearance and a motion for a continuance was filed by a new attorney representing plaintiff. The motion stated that the new attorney had been retained on November 7, 1990 "because Plaintiff's co-counsel feels that he is incapable of withstanding the rigors of a trial." The motion also stated that the new attorney had contacted various expert witnesses who would have reports available soon. The court granted the motion and gave plaintiff until January 10, 1991 to disclose an expert witness. Defendant's motion for summary judgment was held in abeyance. As far as we are aware, the only report made available by plaintiff is that of the accident reconstructionist mentioned earlier. This report was addressed to plaintiff's first attorney.

Following the court's decision to grant plaintiff a continuance, defendant filed a petition for extraordinary relief with this Court, asserting that the Rutland Superior Court abused its discretion by failing to limit plaintiff's discovery so as to allow defendant a "just, speedy, and inexpensive determination" of the case against it.

■■■■■ Extraordinary relief is available "where relief would have been available at common law through a writ of mandamus, prohibition, or quo warranto." *Ley v. Dall*, 150 Vt. 383, 385, 553 A.2d 562, 563 (1988). Defendant's petition is in the nature of a mandamus, which "is a command from a higher authority to an administrator, executive, judicial officer or inferior tribunal to perform a particular act, to which the party seeking the relief has a clear right." *Id.* at 385-86, 553 A.2d at 563. Where the act complained of involves judicial discretion, as it does here, mandamus is appropriate "only in those exceptional cases" where judicial power is usurped or the court clearly

abuses its discretion. *Id.* at 386, 553 A.2d at 564 (trial courts have broad discretion regarding discovery matters); see also *State v. Forte*, 154 Vt. 46, 48, 572 A.2d 941, 942 (1990) (showing of clear abuse of discretion or arbitrary abuse of power is required in order to obtain extraordinary relief). Accordingly, only in exceptional cases is "extraordinary relief . . . an appropriate means for challenging a pretrial discovery order on the ground of the trial court's abuse of discretion." *Monti v. State*, 151 Vt. 609, 611, 563 A.2d 629, 630 (1989).

We must determine, then, whether the court has clearly abused its discretion by refusing to grant relief to which the complaining party has a clear right. Under V.R.C.P. 26(b)(1), the court "shall" limit the "frequency or extent" of discovery if (i) it is unreasonably cumulative or duplicative, (ii) it is unduly burdensome or expensive, taking into account the needs of the case, or (iii) "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." The mandatory language of Rule 26(b)(1) was the result of a 1984 amendment aimed at encouraging judges to be more diligent in preventing unnecessary discovery. Reporter's Notes, V.R.C.P. 26; see also *English v. Cowell*, 117 F.R.D. 132, 134 (C.D. Ill. 1986) (Fed. R. Civ. P. 26(b)(1) was amended to encourage trial judge to be more aggressive in eliminating overdiscovery). Under the amended rule, the trial court now has an affirmative duty to limit discovery so as to protect parties from annoyance and excessive expense. See, e.g., *Dolgow v. Anderson*, 53 F.R.D. 661, 664 (E.D.N.Y. 1971) (court refused to reopen discovery where plaintiff supplied affidavit of expert witness two years after court had ruled that there had been full discovery) (cited with approval in Committee Note of 1983 Amendment to Fed. R. Civ. P. 26(b), as reported in 97 F.R.D. 165, 217 (1983)).

Discovery is one of the most important legal tools available in the search for truth, the fundamental purpose of litigation. It allows parties to acquire the fullest knowledge of relevant facts so that cases are decided "by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984). Accordingly, discovery should not be cut off until the parties have had an ample opportunity to uncover relevant facts. On the other hand, the line must be drawn at some point

because "discovery techniques and tactics have become a highly developed litigation art—one not infrequently exploited to the disadvantage of justice." *Herbert v. Lando*, 441 U.S. 153, 179 (1979) (Powell, J., concurring). Indeed, a great majority of both state and federal judges indicated in a recent Harris poll that abuse of discovery is the most important cause of delay and excessive expense in litigation. Harris, *Judges' Opinions on Procedural Issues: A Survey of State and Federal Trial Judges Who Spend at Least Half Their Time on General Civil Cases*, 69 B.U.L. Rev. 731, 733 (1989). Because the incentive for lawyers and their clients is often to further rather than minimize delay, see Rosenberg & King, *Curbing Discovery Abuse in Civil Litigation: Enough is Enough*, 1981 B.Y.U. L. Rev. 579, 589, the courts must utilize their power under Rule 26(b) to ensure that the process is not being abused.

Plaintiff's discovery has gone on for an unreasonable length of time with no end in sight. We can find no justification for allowing it to continue and denying defendant consideration of its attempt to end the litigation. We do not accept that endless discovery is justified because the "case involves a widow trying to obtain information about a faulty design of a vehicle from a multimillion dollar corporation."

Our rules require that a litigant have a good faith, and reasonably supported, belief that his or her claim has merit and that the requests for discovery are not interposed to harass or to cause unnecessary delay or expense. See V.R.C.P. 11; V.R.C.P. 26(g). Thus, the purpose of discovery is *not* to fish through every potential theory of recovery to determine if there is any factual support for the theory. See *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975); cf. *Perkins v. General Motors Corp.*, 129 F.R.D. 655, 662 (W.D. Mo. 1990) (sanctions imposed under Rule 26(g) where plaintiff and her attorney failed to conduct an objectively reasonable inquiry into allegations made in interrogatory answers, which were interposed to harass defendant and to increase the cost of litigation). Nor is it the purpose to change the economics of litigation so that the litigant with the deepest pocket or the most perseverance will prevail in the end. If we are unwilling to give relief from oppressive and unreasonable discovery to a large corporation, we will be unable to intervene when a large corporation uses an economic advantage to oppress an individual litigant.

■ Because it is indisputable that plaintiff had ample opportunity to obtain the information she sought and that defendant has been unduly burdened by plaintiff's discovery requests, we conclude that the court abused its discretion by refusing to close discovery long after the passage of the discovery deadline set by that court. Cf. *Poplaski v. Lamphere*, 152 Vt. at 254–55, 565 A.2d at 1328–29 (trial court properly denied plaintiff's motion for a continuance for the purpose of completing depositions, filed four days before scheduled. summary judgment hearing, where plaintiff had sixteen months between the filing of the complaint and the summary judgment hearing in which to conduct the necessary depositions). We fail to understand how the fact that plaintiff's first attorney felt he would have been unable to stand the rigors of a trial prevented the court from standing by its own discovery deadlines and ruling on defendant's summary judgment motion. The need to act here was so clear, and the delay was so unreasonable, that the circumstances warrant extraordinary relief in this Court.

■ Regarding defendant's request that this Court rule on his summary judgment motion, we recognize that *Poplaski* held that "[s]ummary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial." *Id.* at 254–55, 565 A.2d at 1329. We also recognize that other jurisdictions have used their mandamus power to order trial courts to enter summary judgment where entitlement is clear. See, e.g., *In re Charge of Judicial Misconduct*, 593 F.2d 879, 881 (9th Cir. 1979); *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal. App. 3d 405, 410, 93 Cal. Rptr. 338, 341 (1971). Nevertheless, in the absence of a complete record, we decline to direct the superior court to enter summary judgment here. Rather, we direct the court to close discovery and rule on defendant's motion for summary judgment. If summary judgment is inappropriate at this time, the matter should proceed expeditiously to trial.

*Petition for extraordinary relief is granted. The Rutland Superior Court is directed to close discovery and rule on defendant's motion for summary judgment.*