## Roy and Betty J. HUTCHINS v. FLETCHER ALLEN HEALTH CARE, INC.

[776 A.2d 376]

No. 98-543

April 11, 2001. Plaintiffs Roy and Betty Hutchins appeal from a jury verdict in favor of defendant Fletcher Allen Health Care, Inc. in this medical malpractice action. On appeal, plaintiffs claim the trial court erred in (1) excluding their proposed expert witness, (2) admitting undisclosed expert opinion testimony, and (3) failing to instruct the jury regarding negligence per se and res ipsa loquitur. We affirm.

Plaintiffs' claim of negligence centers on the fact that doctors employed by defendant left a surgical sponge, a thin rectangle of sterile gauze, in Roy Hutchins's body after they had opened his chest to massage his heart. The facts are unusual because the procedure occurred in the surgical intensive care unit (SICU), where Hutchins was placed after he had emergency cardiac bypass surgery. He suffered cardiac arrest, and was "dead" for an hour before five doctors employed by defendant restarted the heart and surgically closed his chest. One surgical sponge was left between Hutchins's skin and sternum, and he suffered a sternal bone and tissue infection allegedly from the sponge. Eventually, doctors had to remove Hutchins's sternum and other tissue and rib material. The pain and suffering, and loss of functionality, caused by the infection and resulting treatment serve as the basis for plaintiffs' damage claim.

Plaintiffs brought suit on June 24, 1996, almost three years after the bypass surgery and cardiac arrest. They alleged that the failure to remove the sponge involved a number of negligent acts. Specifically, they alleged that defendant

was negligent in failing to furnish the SICU with radio-opaque sponges and failing to put such sponges with the equipment used to open Hutchins's chest. Radio-opaque sponges contain material that make them visible on x-rays so they can be found during and after operations. Plaintiffs also charged that the doctors were negligent in failing to use radio-opaque sponges that were available, failing to keep track of the sponges they used, and failing to find and remove the sponge which caused the infection.

During initial discovery plaintiffs disclosed that they had retained two expert witnesses who would testify consistent with the negligence theories above and would also testify that defendant's negligence was the cause of plaintiffs' damages. In July 1997, plaintiffs disclosed that they had retained a third expert, Dr. John Luber, who would testify that defendant's doctors were negligent in other respects in conducting the various procedures they employed. As a result of a status conference in November 1997, the court ordered that any further expert witnesses for plaintiffs be disclosed by December 1, 1997, so the case could be ready for trial on July 1, 1998. On March 24, 1998, plaintiffs filed a motion for a continuance and for leave to employ another expert witness because Dr. Luber had announced that he would not testify. At the May 27 hearing on the motion, plaintiffs disclosed that they had found the needed expert, Dr. Gary Kopf. Nevertheless, the trial court denied the motion for a continuance and the motion to add a replacement expert witness, and later ruled that Dr. Kopf could not testify in rebuttal. In a related action, the court also denied plaintiffs' motion to prohibit the five doctors employed by defendant and involved in Hutchins's treatment from giving expert testimony with respect to the treatment actions taken by any of the doctors. These decisions are challenged

by plaintiffs in the first two issues they raise on appeal.

During trial, plaintiffs requested that the trial court charge the jury that failure to remove the sponge was negligence per se and that the jury could find negligence based on res ipsa loquitur. The failure to grant those requests is the basis for the third issue on appeal.

On appeal, plaintiffs first argue that the trial court erred in denying their pretrial motion to add Dr. Kopf as an expert witness to replace Dr. Luber. Under V.R.C.P. 26(b)(4)(A) an opposing party has a right to discover the identity, and the substance of the testimony, of a party's expert witness and to take the expert's deposition. The trial court may set reasonable deadlines on the completion of discovery. See V.R.C.P. 26(f). If a party fails to disclose the intent to offer the testimony of an expert witness within a discovery deadline, the trial court may prevent the non-disclosing party from offering the expert testimony. See *White Current Corp. v. Vermont Elec. Coop.*, 158 Vt. 216, 223, 609 A.2d 222, 226 (1992); see also *State v. Meyers*, 153 Vt. 219, 224, 569 A.2d 1081, 1085 (1989) (decided under similar criminal rule). On appeal from an order excluding an expert witness from testifying, the appellant must show an abuse of discretion. See *White Current Corp.*, 158 Vt. at 223, 609 A.2d at 226.

The court's decision explained two reasons for disallowing the replacement expert witness. First, the new expert witness was disclosed only a month before the jury drawing date, and allowing defendant adequate discovery would delay the trial · significantly.[1]

---

[1] The motion to allow Dr. Kopf was argued on May 27, 1998, and apparently was orally denied on that date. At that time, the trial was scheduled to commence right after jury drawing on

Second, Dr. Kopf would testify only to the negligence theories involving the failure to remove the sponge, and would not support the broader theories advanced by Dr. Luber. Thus, Dr. Kopf's testimony was cumulative to that of plaintiffs' other two expert witnesses.

The court had the power to set a trial date and deny pretrial motions that would delay its scheduled trial date. See V.R.C.P. 16.2. It could prevent the "needless presentation of cumulative evidence." V.R.E. 403. In acting for these reasons in denying the motion to add Dr. Kopf as an expert witness, the court did not abuse its discretion.

The court was similarly within its discretion when it denied pretrial the plaintiffs' listing of Dr. Kopf as a rebuttal witness. To the extent that Dr. Kopf was going to offer the same testimony on rebuttal as plaintiffs had proffered for their case-in-chief, the same reasons warranted the exclusion. In any event, the court has wide discretion over whether to allow rebuttal evidence, *Nelson v. Percy*, 149 Vt. 168, 170, 540 A.2d 1035, 1037 (1987), and plaintiffs could not identify aspects of defendant's evidence that they needed to rebut. They never raised the issue with the trial judge during or after defendant's evidence.

Next, plaintiffs argue that defendant's doctors should not have been allowed to give expert opinion testimony because Dr. Kopf was excluded, based on the theory that the number of expert wit-

nesses should be approximately even,[2] and because defendant failed to disclose these doctors as expert witnesses in violation of its discovery obligation. In response to both points, we note that the court excluded Dr. Kopf not because it was controlling the number of expert witnesses either party could call, but because plaintiffs did not disclose Dr. Kopf within the discovery deadline. Defendant did not have the same obligation to disclose the opinions of its doctors because these opinions were formed as a result of the doctors' participation in the events that gave rise to the litigation and not "in anticipation of litigation or for trial." V.R.C.P. 26(b)(4). "An expert whose knowledge or opinions are relevant because of his participation in the events giving rise to suit should be treated for discovery purposes as an ordinary witness." Reporter's Notes to V.R.C.P. 26. Defendant committed no discovery violation, and there was no reason to exclude categorically any of its witnesses. Assuming the court has the power to equalize the number of expert witnesses the parties may call, it did not act to do so here.

---

July 1, 1998. The court issued a written decision on the motion on July 9 after the jury drawing and also after the court had continued the trial to September 8, in response to defendant's motion. There is no indication that plaintiffs renewed their motion after the continuance was granted, except with respect to rebuttal as discussed in the text, and they did not seek at trial to admit testimony from Dr. Kopf.

---

[2] Plaintiffs failed to preserve this issue with respect to three of the five witnesses at issue. On the morning of the second day of trial, during a bench conference, plaintiffs objected to the defendant being allowed to have the doctors involved in the surgery testify as expert witnesses. The court ruled that these doctors could testify. All the doctors testified and gave opinions, but plaintiffs did not object to opinion testimony given by three of the doctors. Thus, plaintiffs have waived any claimed error with respect to the testimony of these doctors. See *State v. Koveos*, 169 Vt. 62, 69, 732 A.2d 722, 727 (1999) (motion in limine to admit or exclude evidence preliminary and further objection required to preserve issue).

Even if defendant had technically violated a discovery obligation, it is difficult to see how such a violation prejudiced plaintiffs and required the sanction they seek.[3] Plaintiffs' filings showed that they were aware that defendant's doctors would state their opinions on their own conduct, and that of their colleagues. Plaintiffs took the deposition of each of the doctors and were free to explore the opinions of each. None of the delay concerns raised with respect to Dr. Kopf applied to defendant's doctors.

Plaintiffs' final arguments relate to the jury instructions. Plaintiffs filed a trial memo in which they proposed jury instructions that would have told the jury that (1) leaving a surgical sponge inside a patient, unless there is a medical reason for doing so, is negligence per se; and (2) if plaintiffs satisfy the four elements of res ipsa loquitur as set forth in *Cyr v. Green Mountain Power Corp.*, 145 Vt. 231, 235-36, 485 A.2d 1265, 1268 (1984), then the jury could infer negligence from the fact that the sponge was left inside Mr. Hutchins. The court's charge to the jury did not include these requested instructions, but plaintiffs failed to object following the delivery of the charge. As a result, plaintiffs waived any claim of error with respect to the jury instructions. V.R.C.P. 51; *Trombley v. Southwestern Vt. Med. Ctr.*, 169 Vt. 386, 395, 738 A.2d 103, 110 (1999); *Hartnett v. Medical Ctr. Hosp. of Vt.*, 146 Vt. 297, 302, 304, 503 A.2d 1134, 1137 (1985).

*Affirmed.*

------

[3] In addition to the reasons in the text, we question whether the opinions of the interested doctors unfairly outweigh those of plaintiffs' disinterested experts. Moreover, the jury was instructed by the court that it could find the testimony of a smaller number of experts to be more credible than that of a larger number of experts testifying to the contrary.

Motion for reargument denied May 3, 2001.