2013 VT 8

# Albert Stella, as Next of Kin and in His Capacity as Executor of the Estate of Deborah A. Stella v. Laurie Spaulding, M.D. and Fletcher Allen Health Care, Inc.

[67 A.3d 247]

No. 11-327

Present: Dooley, Skoglund, Burgess and Robinson, JJ., and Bent, Supr. J., Specially Assigned

Opinion Filed February 1, 2013

228

*Matthew G. Hart* of *Kenlan, Schwiebert, Facey & Goss, P.C.*, Rutland, for Plaintiff-Appellant.

*S. Crocker Bennett, II* and *David M. Pocius* of *Paul Frank + Collins P.C.*, Burlington, for Defendants-Appellees.

¶ 1. **Skoglund, J.** In this medical malpractice action, plaintiff appeals the court's entry of judgment in defendants' favor following the court's discovery sanction, which precluded plaintiff from offering expert testimony or evidence regarding defendants' negligence due to plaintiff's repeated failure to adequately reply to interrogatories. On appeal, plaintiff argues that the discovery response was sufficient and the court abused its discretion in concluding that more detailed factual information was required. We affirm.

¶ 2. The record reveals the following. Dr. Spaulding performed weight-loss surgery on patient Deborah A. Stella on May 2, 2007 at Fletcher Allen Health Care (FAHC). Patient was subsequently discharged from FAHC and sent to a nursing home to rehabilitate. Dr. Spaulding provided patient with post-operative care, including examining patient's incision, which showed signs of infection. In June 2007, the nursing home confirmed that patient had contracted a bacterial infection at the incision site. Patient was then treated by various medical professionals at different facilities. Patient died in November 2007 from the infection. In November 2009, plaintiff, as the representative of the deceased patient, filed suit against defendants Dr. Spaulding and FAHC,

alleging that Dr. Spaulding had deviated from the acceptable standard of medical care and negligently failed to treat the infection that eventually caused patient's death. The complaint alleged that patient's primary care physician, Dr. Stickney, recommended a course of antibiotics, but Dr. Spaulding instructed that physician not to prescribe any antibiotics.

¶ 3. In January 2010, defendants sent plaintiff a set of interrogatories and requests to produce. Two interrogatories are relevant to this appeal. Interrogatory 64 requested the "identity of experts to be employed at trial of this matter, the subject of their testimony, their opinions and the substance of the facts, which are grounds therefore." Interrogatory 71 asked plaintiff to state the alleged negligent acts or omissions committed by Dr. Spaulding specified by date and time, how the act impacted patient, and what the proper course of care should have been. In March 2010, the court issued a discovery order. In June 2010, pursuant to the discovery order, plaintiff disclosed that Dr. Stickney would testify concerning defendants' failure to treat patient's infection "and that the failure was a breach of the standard of care and resulted in the death of [patient]."

¶ 4. Meanwhile, on April 20, 2010, defendants filed a motion to compel plaintiff to respond to the interrogatories. On April 22, 2010, plaintiff responded to other interrogatories, but did not identify an expert or respond to Interrogatory 71. On April 30, 2010, defendants sent a letter to plaintiff highlighting inadequacies and insufficiencies in plaintiff's response to the interrogatories.

¶ 5. Faced with a lack of response, defendants filed another motion to compel, and the court held a hearing on June 16, 2010. At the hearing, the parties discussed several aspects of plaintiff's discovery response and agreed that plaintiff would sign releases so that defendants could obtain · patient's medical records. The sufficiency of plaintiff's expert disclosure apparently was not discussed at the hearing. Later in June, defendants attempted to obtain a more detailed disclosure regarding plaintiff's expert by sending a letter, which requested the dates of defendants' alleged negligent acts, the specifics of these acts and more information about how those acts led to patient's death. The letter explained that defendants required this information to assess whether to take Dr. Stickney's deposition. Plaintiff responded by letter, reiterating that it intended to present testimony from Dr. Stickney regarding Dr. Spaulding's negligence in failing to treat patient's infection but adding none of the specifics requested.

¶ 6. Defendants then filed another motion to compel on July 22, 2010. This motion set forth a detailed chronology of patient's care. This history is briefly repeated here because it is relevant to the question of whether plaintiff's answer was complete. Following patient's surgery on May 2, 2007, she was discharged from FAHC to a local rehabilitation facility. On examination by Dr. Spaulding on May 22, 2007, some wound drainage was noted and a minor wound infection diagnosed. A loose wound packing was prescribed, but no antibiotics. Patient was transferred to a nursing home in Rutland and, on June 1, 2007, Dr. Spaulding's office was advised that further indications of wound infection existed and that patient's primary care doctor (presumably Dr. Stickney) had ordered a culture. Three days later, Dr. Spaulding was advised by the nursing home that the culture showed a MRSA infection and that a pharmacy had recommended antibiotic treatment with doxycycline. Dr. Spaulding approved the proposed plan to start patient on a course of that antibiotic. Dr. Stickney's medical records indicate he ordered the antibiotic that day.

¶ 7. Patient was discharged on June 4, 2007, and returned home. She saw Dr. Stickney on June 26 and at that time her wound appeared sufficiently healed so that the packing could cease. Dr. Spaulding saw patient on July 30 and noted the wound was draining again so she ordered a wound exploration and evacuation for August 13, 2007. On August 8, however, patient suffered a pulmonary embolism and was hospitalized in Rutland. Dr. Spaulding did not treat patient after that time. Patient's wound infection was noted at the Rutland hospital. Neither her primary care doctor nor the surgeon there prescribed or recommended antibiotics at the hospital or after discharge. Patient was readmitted on two more occasions to the Rutland hospital in September 2007 for matters related to the wound infection. Again, she was not prescribed antibiotics. It was discovered she had developed a MRSA infection of her heart valves. She was transferred to FAHC, but physicians were unable to resolve the infection and she died of sepsis on November 29, 2007.

¶ 8. Defendants' motion alleged that plaintiff had failed to adequately respond to Interrogatory 71 regarding what specifically was allegedly done wrong by Dr. Spaulding or FAHC, what should have been done, and how the negligent acts altered patient's outcome. Defendants also claimed that plaintiff had not complied with Vermont Rule of Civil Procedure 26 regarding

expert disclosures because there was insufficient information about Dr. Stickney's opinion. Defendants set forth the following list of questions that remained unanswered:

> What does Dr. Stickney claim that Dr. Spaulding should have done, and when? What information does he claim she had about his patient's [infection]? Why was Dr. Spaulding's refusal (if in fact there was a refusal) to treat [patient] binding on Dr. Stickney and the other Rutland physicians, including the surgeon who operated on [patient] . . . ? What would the allegedly omitted action have done to avert [patient's] sepsis? What specific other persons at FAHC does Dr. Stickney claim were in violation of the standard of care? What specifically did they do wrong? What should those persons have done?

¶ 9. Plaintiff did not respond. The court granted the motion on September 8, ordering plaintiff to respond within ten days. Plaintiff then filed a motion for clarification, asserting that an expert disclosure had been supplied and that nothing further was required. The court's entry order regarding the motion explained that the provision of Dr. Stickney's file was not sufficient satisfaction of the defendants' discovery request for the substance of the witness's expert opinion. It also extended the compliance date.

¶ 10. On October 1, plaintiff filed a supplemental disclosure, which stated that Dr. Stickney's opinion was that defendants' refusal to treat patient's infection caused her to develop sepsis which led to her death. And, that failure to aggressively treat or to allow Dr. Stickney to treat the infection with antibiotics was a breach of the standard of care. Defendants filed a motion to dismiss or for sanctions for plaintiff's continued refusal to comply with the court's discovery orders. The court issued an order on March 29, 2011, explaining:

> The court accepts that Plaintiff's counsel disclosed the name of Dr. Stickney as an expert witness on medical negligence on June 1, 2010. However, over 9 months have passed since then, and 13 months have passed since answers to Defendant's First Set of Interrogatories and Requests to Produce were due, and Plaintiff has not provided the specifics requested in Interrogatories 64 and 71, and has not complied with the two Orders to Compel issued September 8, 2010 and September 21, 2010.

Specifically, Plaintiff has not provided the specifics of Plaintiff's expert's opinions as to specific acts of negligence and the standard of care and failure to meet the standard of care requested in those two interrogatories. There are no particular dates or acts or incidents of conduct identified in response to Interrogatory 71, and the substance of the disclosed expert's opinion is described in such general terms that it cannot be connected to any specific acts or incidents.

Defendants, having sought reasonable discovery, are not obliged to incur the costs of a deposition in order to obtain the information requested.

¶ 11. The court sanctioned plaintiff for his noncompliance by precluding plaintiff from using any evidence at trial that was requested in Interrogatories 64 and 71. Unable to submit expert evidence or evidence of defendants' negligence, plaintiff conceded that it could not oppose a motion for summary judgment. The court granted judgment in defendants' favor. Plaintiff appeals.

¶ 12. On appeal, plaintiff challenges the discovery sanction on two grounds. First, plaintiff contends that there was no basis for the July motion to compel because discovery matters were resolved by the June hearing. Second, plaintiff claims that its disclosure was adequate and no further information was required under the applicable rule.

■ ■ ¶ 13. The record does not support plaintiff's first argument that defendants' July motion to compel was precluded by the court's oral rulings during the June hearing. The June hearing focused on other discovery matters, including defendants' attempt to obtain patient's medical files. At the hearing, the court did not make any ruling on the sufficiency of plaintiff's expert disclosure or completeness of plaintiff's answers to interrogatories. The court's rulings certainly did not bar further consideration of the adequacy of plaintiff's answers regarding its expert and the substance of the expert's opinion. See *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 18, 177 Vt. 287, 865 A.2d 350 (explaining that discovery orders "are inherently fluid" and may be "alter[ed] as the litigation unfolds").

■ ¶ 14. Next, we turn to plaintiff's argument regarding the adequacy of its disclosure and answers to interrogatories. In

general, the purpose of discovery is to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Meacham v. Kawasaki Motors Corp.*, 139 Vt. 44, 46, 421 A.2d 1299, 1301 (1980) (quotation omitted). "Discovery is one of the most important legal tools available in the search for truth, the fundamental purpose of litigation. It allows parties to acquire the fullest knowledge of relevant facts so that cases are decided 'by what the facts reveal, not by what facts are concealed.'" *Chrysler Corp. v. Makovec*, 157 Vt. 84, 89, 596 A.2d 1284, 1287-88 (1991) (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984)).

¶ 15. As to expert witnesses, Vermont Rule of Civil Procedure 26 specifies:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions as to which the expert is expected to testify and a summary of the grounds for each opinion.

V.R.C.P. 26(b)(4)(A)(i). Here, plaintiff challenges both whether the ordered disclosure was required by Rule 26(b)(4)(A)(i) and whether the court erred in sanctioning plaintiff for noncompliance. The trial court has broad discretion in both areas. We have frequently recognized that "[d]iscovery rulings are within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse or withholding of that discretion." *Lamare v. N. Country Animal League*, 170 Vt. 115, 124, 743 A.2d 598, 604 (1999). "So long as the trial court had a reasonable basis for its actions, we will not interfere with its discovery rulings even if another court might have reached a different conclusion on the same issue." *State v. Lee*, 2007 VT 7, ¶ 11, 181 Vt. 605, 924 A.2d 81 (mem.) (quotation omitted). Further, the trial court may sanction noncompliance with discovery orders by "excluding evidence, granting a continuance, or by taking other appropriate action." *Greene v. Bell*, 171 Vt. 280, 283, 762 A.2d 865, 869 (2000). We will not disturb a trial court's imposition of discovery sanctions absent an abuse of discretion. *Id.*

¶ 16. On the first question of the scope of Rule 26, we hold that the court did not abuse its discretion in concluding that

plaintiff had failed to comply with defendants' discovery request. Plaintiff failed to provide "the substance of the facts and opinions as to which the expert is expected to testify." V.R.C.P. 26(b)(4)(A)(i). In answer to defendants' requests, plaintiff provided little more than what was included in the complaint. Interrogatory 71 specifically asked about plaintiff's theory of the case. Plaintiff failed to answer this question with more than general allegations, making no delineation as to what acts or omissions committed by defendants at particular times were negligent or how those acts led to the patient's death. Without this disclosure, defendants were hampered in making litigation decisions.

¶ 17. As noted in the Reporter's Notes to Rule 26, the summary of the expert testimony required in answer to an interrogatory under Rule 26(b)(4) helps parties avoid the expense of unnecessary depositions. The Reporter's Notes go on to state: "Since the deposition may be taken only after the party has received the summary of the expert testimony required in answer to an interrogatory under Rule 26(b)(4)(A)(i), parties will be able to avoid the expense of unnecessary depositions." Thus, the purpose of Rule 26(b)(4)(A)(i) is to allow defendants to garner enough information to make a choice about whether and how to take a deposition, but the rule does not assume that a deposition will be taken.[1] Here, the vague disclosures lacked the necessary specificity to allow defendants to assess the need for and, equally important, to prepare to take the expert's deposition.

¶ 18. It was thus wholly within the court's discretion to require more specific answers. As a case interpreting the analogous federal rule explained, "liberal discovery of potential expert testimony [is] not merely for convenience of the court and the parties, but [is] intended to make the task of the trier of fact more manageable by means of an orderly presentation of complex issues of fact." *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457

---

[1] The dissent emphasizes that the Reporter's Notes recognize the "reality that requesting and taking depositions of trial experts has become standard practice," but when read in context this statement is not a recognition that a deposition must be taken to reveal the plaintiff's theory of the case. See Reporter's Notes — 1996 Amendment, V.R.C.P. 26. This comment was made in conjunction with an amendment in 1996 that adopted some of the 1993 amendments to the federal rules, including eliminating the requirement of court approval for discovery from experts to be called at trial.

(2d Cir. 1975) (construing federal rule in effect at that time).[2] It cannot be argued that the facts sought were irrelevant to defendants' preparation of the case. The concept behind disclosure of expert testimony is to allow for effective preparation for cross-examination and rebuttal when testimony is of a complex nature. Without the disclosure, defendants were left to speculate on plaintiff's theory and the grounds for any opinion.[3]

¶ 19. The dissent construes the court's order as requiring answers beyond the bounds of Rule 26(b)(4) and thus concludes that the court abused its discretion. The dissent's recitation of the law is largely correct. We agree that "a party cannot require, by interrogatory, disclosures that are more extensive than provided for in Rule 26(b)(4)." *Post*, ¶ 27. Certainly, Rule 26(b)(4) places an obligation of disclosure on plaintiff, but also limits the bounds of that disclosure to a specific list of items. In this way, a party may not through interrogatory obtain "all of the details a requesting party might ultimately want to know." *Post*, ¶ 29. The critical and limited issue here is whether the interrogatories sought to obtain more than what was required by Rule 26(b)(4).

¶ 20. Defendants asked plaintiff to describe the incidents of negligence committed, the dates of those acts and how those acts deviated from the standard of care. We agree with the trial court's assessment that this information was within the bounds of what the rule requires to be disclosed. In the language of the "pivotal case" cited by the dissent, *post*, ¶ 30, the answers to these questions were relevant to supplying "sufficient notice of the theories under which the [plaintiff planned] to proceed." *Hockley v. Zent, Inc.*, 89 F.R.D. 26, 30-31 (M.D. Pa. 1980). For example, plaintiff generally asserted that defendants refused to treat patient or to allow Dr. Stickney to prescribe antibiotics, but defendants could properly seek to know when such acts allegedly took place. Further, plaintiff failed to ever identify what persons at FAHC other than the co-defendant were alleged to be at fault. And, plaintiff did not provide any illumination of the critical

---

[2] Vermont Rule of Civil Procedure 26 is very similar to the federal rule in effect from 1970 to 1993. Reporter's Notes, V.R.C.P. 26 (explaining that when enacted Rule 26 was based on federal rule that was effective July 1, 1970).

[3] The dissent's conjecture that Dr. Stickney's opinions arose as a fact witness and should not have been viewed as expert disclosures is a matter that was neither argued below nor raised on appeal, and therefore we do not address it.

question of why Dr. Spaulding's approach would be binding on decedent's treating physicians. Based on the long interplay between the services provided by Dr. Spaulding and Dr. Stickney, it is apparent why the court ordered a more complete disclosure of Dr. Stickney's opinions concerning the applicable standard of care and the cause of patient's death. The case presented a far more complex series of facts than plaintiff's expert disclosure suggested and accordingly more detailed disclosures were properly required. Therefore, it was not error for the court to conclude that these facts were a necessary part of the "substance of the facts and opinions as to which the expert is expected to testify." V.R.C.P. 26(b)(4)(A)(ii). While a ruling otherwise may also have been within the court's discretion, the court's order requiring disclosure of this information did not amount to an abuse of discretion.[4] See *Lee*, 2007 VT 7, ¶ 11 (emphasizing trial court's broad discretion over discovery).

¶ 21. Given plaintiff's failure to comply with the court's several orders to answer the interrogatories and to supplement the expert disclosure and the length of time that had passed, it was also within the court's discretion to sanction plaintiff for failing to comply. See *Follo v. Florindo*, 2009 VT 11, ¶¶ 19-21, 185 Vt. 390, 970 A.2d 1230 (holding that court did not abuse its discretion in sanctioning defendants by precluding use of expert testimony when defendants did not respond for five months after discovery deadline). The court responded to plaintiff's failure to comply with the court's order to completely answer the interrogatories by precluding plaintiff from submitting evidence related to those interrogatories. This sanction was within the court's power and was not "untenable" or "unreasonable." *White Current Corp. v. Vt. Elec. Coop., Inc.*, 158 Vt. 216, 223, 609 A.2d 222, 226 (1992) (explaining that court's use of sanctions will be upheld unless "discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable" (quotation omitted)).

---

[4] Trial court discretion over discovery is necessary given the differences presented by the particular facts of each case. Although the dissent focuses on those cases where courts have denied motions to compel and deemed answers to expert interrogatories adequate, other courts have required more comprehensive answers in response to motions to compel. See, e.g., *Kane Gas Light & Heating Co. v. Pennzoil Co.*, 99 F.R.D. 614, 615 (W.D. Pa. 1983); *Lawson v. Consol. Rail Corp.*, No. 87C-JN-3, 1990 WL 91091, at *2 (Del. Super. Ct. June 8, 1990). The trial court must have the ability to manage gamesmanship on both sides by exercising its discretion in response to the particular situation presented to it.

¶ 22. The dissent asserts that the court's chosen sanction was beyond its discretion because the sanction essentially amounted to dismissal.[5] "When a trial court imposes the ultimate sanction of dismissal, we require findings of fact to show bad faith or deliberate and willful disregard of the court's orders, as well as prejudice to the opposing party." *Lee*, 2007 VT 7, ¶ 17. We disagree that the court in this instance was required to make these special findings because no dismissal was imposed. Our cases have carefully distinguished those cases where a sanction of dismissal or default is imposed from situations where the sanction effectively results in dismissal. Although a sanction may have a similar effect, no special findings are required when there is no outright dismissal or default. *State v. Howe Cleaners, Inc.*, 2010 VT 70, ¶ 19, 188 Vt. 303, 9 A.3d 276. "In short, no special findings of bad faith or prejudice, or exhaustion of lesser sanctions, are required for anything less than the ultimate sanctions of dismissal or default . . . ." *Id.* ¶ 22. Because the sanction in this case precluded plaintiff from offering certain evidence, but was not a dismissal, no special findings were required.

*Affirmed.*

¶ 23. **Robinson, J.,** dissenting. The issue in this case is not whether defendants were entitled to the information they sought through the ordinary course of discovery; rather, the question presented is whether they got the information they were entitled to get through the particular tool of expert interrogatories pursuant to Vermont Rule of Civil Procedure 26(b)(4)(A)(i). In affirming the trial court, the majority applies a far more exacting standard than the rule supports. Moreover, the trial court's sanction for the purported discovery violation, which was tantamount to dismissal of plaintiff's case on the merits, exceeded the trial court's broad discretion.

¶ 24. First, an aside. Responding to the issue as framed by plaintiff, the majority analyzes plaintiff's response to defendants' interrogatories concerning Dr. Stickney using Rule 26(b)(4) — the provision governing discovery as to expert witnesses. Dr. Stickney was not merely a disinterested expert in this case; he was the decedent's primary care provider. Plaintiff's complaint alleges that

---

[5] The dissent's recitation of other possible sanctions does not mean that the court's chosen sanction was error.

the decedent's primary care physician — Dr. Stickney — recommended that decedent start a course of antibiotics to treat her MRSA infection, but after consulting with defendant doctor, he was instructed not to prescribe any antibiotics. That makes Dr. Stickney an "event witness." To the extent that the facts he knows and opinions he holds were not acquired or developed *in anticipation of litigation*, but, rather, arise from his own participation in the case, plaintiff was not obligated to make expert disclosures for Dr. Stickney pursuant to Rule 26(b)(4). The Reporter's Notes to Rule 26 make this clear:

> Note that the rule applies only to "facts known and opinions held" that were "acquired or developed in anticipation of litigation or for trial." An expert whose knowledge or opinions are relevant because of his participation in the events giving rise to suit should be treated for discovery purposes as an ordinary witness.

See also Reporter's Notes — 2012 Amendment, V.R.C.P. 26 ("Rule 26(b)(4)(A)(i) continues to provide that the disclosure requirement of paragraph (4) does not extend to 'event witnesses,' in contrast to the requirement of [the] Federal Rule.").

¶ 25. In fact, in the context of a medical malpractice case, this Court has held that the defendant hospital did not run afoul of Rule 26(b)(4) when it introduced opinion testimony from treating physicians without having disclosed them as expert witnesses. *Hutchins v. Fletcher Allen Health Care, Inc.*, 172 Vt. 580, 582, 776 A.2d 376, 379 (2001) (mem.). We explained, "Defendant did not have the same obligation to disclose the opinions of its doctors because these opinions were formed as a result of the doctors' participation in the events that gave rise to the litigation and not 'in anticipation of litigation or for trial.'" *Id.* (quoting V.R.C.P. 26(b)(4)).

¶ 26. Accordingly, I have serious reservations about whether plaintiff was even required to provide Rule 26(b)(4) disclosures with respect to Dr. Stickney, and whether Rule 26(b)(4) is the proper legal framework for analyzing the case. Because plaintiff did disclose Dr. Stickney pursuant to Rule 26(b)(4), did not make this argument below, and does not make this argument on appeal, and because defendants likewise treat this as a straightforward Rule 26(b)(4) expert disclosure case, for the purposes of this case only, I, like the majority, am viewing the issue through the lens

of Rule 26(b)(4). *See, e.g., McAdams v. Town of Barnard*, 2007 VT 61, ¶ 8, 182 Vt. 259, 936 A.2d 1310 ("Arguments not briefed are waived.").

## I.

¶ 27. My view that the sanction in this case — effective dismissal of plaintiff's case — was unduly harsh flows in large part from my belief that the disclosure was not insufficient. Because Vermont's Rule 26 is very similar to the federal rule in effect from 1970 to 1993, the majority appropriately draws from federal cases applying that version of Federal Rule of Civil Procedure 26. *Ante*, ¶ 18 n.2. Federal case law from that period supports two closely related and important principles. First, pursuant to Rule 26(b)(4), a party cannot require, by interrogatory, disclosures that are more extensive than provided for in Rule 26(b)(4). As a federal district court in Washington explained:

> Pursuant to Rule 26(b)(4)(A), interrogatories seeking discovery of expert information must be confined to requests for (1) the identity of each person whom the other party expects to call as an expert witness at trial, (2) the subject matter on which the expert is expected to testify, (3) the substance of the facts and opinions to which the expert is expected to testify, and (4) a summary of the grounds for each opinion. If a party fails to answer the interrogatories or does so incompletely or evasively, the discovering party may move for an order compelling an answer pursuant to Rule 37(a). However, *if additional information is needed after an answer in compliance with Rule 26(b)(4) has been provided, the party seeking the information must move the court for an order permitting discovery by other means, usually a deposition of the expert.*

*Workman v. Chinchinian*, 807 F. Supp. 634, 645 (E.D. Wash. 1992) (emphasis added) (citation omitted); see also *Hockley v. Zent, Inc.*, 89 F.R.D. 26, 29 (M.D. Pa. 1980) ("[Rule 26(b)(4)] is generally the exclusive method for learning such information."). Pursuant to the previous Federal Rule 26, expert interrogatories were but one, limited component of the overall process for expert discovery. See *Swann v. City of Goldsboro*, 137 F.R.D. 230, 232 (E.D.N.C. 1990) (two-step process outlined in Rule 26(b)(4) "is generally consid-

ered to be the exclusive method for learning such information"); *Shackelford v. Vermeer Mfg. Co.*, 93 F.R.D. 512, 513 (W.D. Tex. 1982) ("[U]nder the scheme set forth in Rule 26(b)(4)(A), only a limited amount of discovery of expert witnesses, by means of interrogatories, is allowed absent agreement of the parties or leave of court."); *Hockley*, 89 F.R.D. at 29 (describing two-step expert discovery process contemplated by the federal rule: first, written disclosures pursuant to Rule 26(b)(4)(A)(i); then, "[i]f the individual seeking discovery desires further data," further discovery of expert by, "e.g., deposition").

¶ 28. The structure of Vermont's rule supports the view that in the context of interrogatories, Rule 26(b)(4)(A)(i) requires disclosure of only the specific matters listed therein, and is but one step in a multi-component discovery process available to litigants. The nonopenended list of permissible requests concerning expert testimony (identity, subject matter, facts and opinions, and grounds for opinions) suggests that such disclosures are both necessary, upon request, and sufficient. *Kapusta v. Dep't of Health/Risk Mgmt.*, 2009 VT 81, ¶ 14, 186 Vt. 276, 980 A.2d 236 ("[T]he expression of one thing is the exclusion of another."). If a litigant could be required to answer any and every question of an expert by way of interrogatory, the rule would say so. Moreover, the Reporter's Notes to the Vermont rules suggest that the two-step process described above has been long-established in Vermont. See Reporter's Notes — 1996 Amendment, V.R.C.P. 26 ("The [elimination of requirement for court approval for expert depositions] reflects the reality that requesting and taking depositions of trial experts has become standard practice.").

¶ 29. A second and related lesson from prior-rule federal case law is that the disclosure required pursuant to Rule 26(b)(4)(A)(i) does not encompass all of the details a requesting party might ultimately want to know, and is not intended as a substitute for further discovery as outlined above. Rather, the purpose of the interrogatories authorized by the prior version of Federal Rule 26(b)(4)(A)(i) was "to afford the questioner notice of the basic arguments the responding litigant intends to press at trial." *Workman*, 807 F. Supp. at 645 (quotations omitted). Accordingly, "a response is adequate if it provides sufficient notice of the theories under which the answering party plans to proceed." *Id.* at 646.

¶ 30. In a pivotal case on the issue, involving a third-party complaint against the manufacturer of a truck's braking system

brought by a truck driver, a federal court considered the sufficiency of the truck driver's response to an expert interrogatory pursuant to Federal Rule 26(b)(4). *Hockley*, 89 F.R.D. 26. The response stated, in relevant part, that the electrical system of the trailer brakes "was equipped with inadequate fail safe devices, disconnect features, nor (sic) devices to warn of system failure." *Id.* at 28. The manufacturer believed the responses were inadequate because they failed to state exactly what was wrong with the identified parts. The manufacturer sought an order requesting a more detailed response or, in the alternative, requiring the truck driver to provide his expert witness for deposition at no expense.

¶ 31. Focusing on the requirements of Federal Rule 26(b)(4)(A)(i), the first step of the two-step process, the court wrote, "Essentially, the inquiries are designed to afford the questioner notice of the basic arguments the responding litigant intends to press at trial." *Id.* at 30. Applying that standard to the disclosure described above, the court concluded that the truck driver had clearly indicated the theory that he was asserting against the manufacturer: the system was defective "because it lacked proper fail safe, disconnect, or warning features." *Id.* at 31. The court acknowledged that the expert's summary was "skeletal," but concluded that it was sufficient to give the movant the notice required by Rule 26(b)(4)(A)(i). *Id.* The manufacturer was free to pursue additional discovery pursuant to Rule 26(b)(4)(A)(ii), but the truck driver had met its obligations pursuant to subsection 26(b)(4)(A)(i). This "notice" standard was the prevailing application of Federal Rule 26(b)(4) before the 1993 amendment. See D. Day, *Discovery Standards for the Testimonial Expert Under Federal Rule of Civil Procedure 26(b)(4): A Twentieth Anniversary Assessment*, 133 F.R.D. 209, 223-24 (1990) ("A decade after *Hockley*, the potential for prejudicial surprise at trial remains as the threshold question in the subdivision (A)(i) notice standard.").

¶ 32. Like the truck driver in *Hockley*, plaintiff in this case was not required to answer by interrogatory the litany of detailed follow-up questions posed by defendants in their motion to compel. *Ante*, ¶ 8. Plaintiff was not required to facilitate an expert-deposition-by-interrogatory. The fact that some questions posed by defendants — whether in a motion to compel or in Interrogatory 71 — remain unanswered, or unanswered to defendants' satisfaction, does not mean that plaintiff has failed to comply with its discovery obligations pursuant to Rule 26(b)(4)(A)(i). The question

presented by this case is whether plaintiff's expert disclosures were sufficient to give defendants "notice of the basic arguments" plaintiff intended to pursue at trial.

¶ 33. In answering this question, I consider several factors. First, the record reflects that, after some delay, plaintiff provided Dr. Stickney's medical file to defendants. Although that file itself is not part of the record on appeal, I presume it includes, at a minimum, Dr. Stickney's notes about his own visits with the decedent following her surgery, as well as of his interactions with fellow care providers, including defendant doctor. Second, plaintiff's complaint is specific and detailed, including dates of significant post-surgical events. Although the complaint is not testimony under oath, it clearly put defendants on notice of the nature and specifics of plaintiff's claims.

¶ 34. Third, and related, plaintiff's claims are based primarily on allegations that defendant doctor *failed* to take action that she should have taken, rather than allegations that she took affirmative actions that caused harm. In particular, plaintiff alleges that defendant doctor performed the surgery; noted a small wound infection in the course of post-surgical care but did not culture the infection and instead ordered that decedent get no antibiotics; and then subsequently instructed decedent's primary care physician not to prescribe any antibiotics. Through the course of this post-operative period, plaintiff alleges decedent's infection grew to the point that it took her life. Given the nature of these complaints, it is hard to imagine how plaintiff could be more specific in identifying the date and particulars of each and every negligent act of defendant doctor; the point of plaintiff's allegations is that defendant doctor failed to take appropriate post-operative action to treat decedent's infection. To the extent that defendant doctor allegedly undertook affirmative acts — opting against prescribing antibiotics after noting a small wound infection, and instructing Dr. Stickney not to provide antibiotics — plaintiff identified those instances from the get-go.

¶ 35. Finally, plaintiff's disclosure as to the substance of Dr. Stickney's opinions was more than sufficiently detailed to put defendant on notice of the arguments plaintiff intended to press at trial:

> The refusal of [defendants] to treat [decedent's infection] caused her to develop sepsis which led to her death.

Specifically, [defendants] knew or should have known that [decedent] had developed a[n] . . . infection at the site of her surgical incision and that she should have been treated with antibiotics. This failure to aggressively treat [decedent's infection] with antibiotics was a breach of the standard of care. In addition, [defendants], when contacted by Dr. Stickney, refused to allow Dr. Stickney to prescribe [decedent] antibiotics for her [infection] claiming that she was their patient and her post surgical treatment was their responsibility. The refusal of [defendants] to allow Dr. Stickney to treat [decedent] with antibiotics was a breach of the standard of care.

¶ 36. What more need plaintiff say to put defendants on notice of its theory of malpractice? The majority states that plaintiff failed to identify what persons at Fletcher Allen Health Care (FAHC), other than the co-defendant, were alleged to be at fault. *Ante*, ¶ 20. This assertion presumes that plaintiff will argue that some person other than defendant doctor was negligent. I see no basis in the pleadings or record to support that assumption. If plaintiff attempted to present at trial claims based on the alleged negligence of other FAHC agents, on the basis of this record, the trial court would be well within its discretion to exclude those new allegations. That speculative possibility does not render the existing disclosure inadequate in its entirety. The majority also states that "plaintiff did not provide any illumination of the critical question of why Dr. Spaulding's approach would be binding on decedent's treating physicians." *Ante*, ¶ 20. In essence, the majority is requiring plaintiff to include as part of its Rule 26(b)(4)(A) disclosure its response to a logical defense that defendants might raise in response to plaintiff's claims: Dr. Stickney himself or some other provider subsequent to Dr. Spaulding's surgery could have prescribed the appropriate antibiotics. The majority's requirement that plaintiff anticipate and respond to defendants' potential counterarguments in their Rule 26(b)(4)(A) expert disclosure is far more exacting than the rule's actual requirement that expert disclosures in response to interrogatories provide "notice of the basic arguments the responding litigant intends to press at trial." *Hockley*, 89 F.R.D. at 30. For the above reasons, I respectfully dissent from the majority's opinion that the trial court did *not* abuse its discretion in concluding that plaintiff had failed to comply with his obligations in discovery.

¶ 37. I realize the approach described above is not without peril. The majority is right that full and fair disclosure promotes fair and efficient trials. The danger of the position set forth above is that litigants will deliberately disclose as little as they believe they must in expert witness interrogatory answers, thereby forcing costly depositions where they might not otherwise be necessary, and disadvantaging litigants who do not have the resources to play that game. On the other hand, an approach that sets up Rule 26(b)(4)(A)(i) as a tool for dismissing cases, or as a portal for far more extensive discovery than described above, invites game-playing of its own. Maybe a rule that allowed litigants to opt out of costly depositions and to substitute, instead, detailed written expert interrogatories, would be a better one. But that is not the rule we have, and any substantial change should be enacted by rule amendment and not a decision that changes the intended meaning of the rule.

## II.

¶ 38. Although I conclude that any sanction would be inappropriate in light of the above analysis, the trial court's response to the perceived shortcomings in plaintiff's interrogatory answers was especially draconian. The trial court could have advanced the goals of discovery, and of Rule 26(b)(4)(A)(i) in particular, by precluding plaintiff from proceeding at trial on the basis of theories or medical opinions not disclosed in discovery. V.R.C.P. 37(b)(2)(B); see, e.g., *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449 (2d Cir. 1975) (trial court improperly allowed defendant car manufacturer to present expert testimony concerning prior fractures within steering assembly where defendant had failed to disclose this theory in discovery). That way, if plaintiff was holding back, he might be left holding the bag.

¶ 39. The trial court could have stayed further proceedings until plaintiff answered the interrogatory to the court's satisfaction, thereby frustrating plaintiff's ability to pursue his claim until he complied. V.R.C.P. 37(b)(2)(C). The trial court could have made a finding of contempt. V.R.C.P. 37(b)(2)(D).

¶ 40. Or the trial court could have responded to plaintiff's plea to the court, presented in plaintiff's Emergency Motion For Clarification of The Court's September 9, 2010 Entry Order and

Request for Hearing, to clarify what more was expected from plaintiff by way of expert disclosure. Instead, the court simply indicated in its handwritten entry order that plaintiff's disclosure was "not sufficient satisfaction of the [d]efendant[s'] discovery request for the substance of the witness' expert opinion." In light of the authority cited above, plaintiff could be forgiven for failing to discern what the trial court perceived was missing.

¶ 41. Rather than pursue one of the above paths, the trial court ruled that plaintiff was precluded from using *any* evidence at trial that *was requested* in Interrogatories 64 and 71. In other words, the scope of defendants' interrogatory inquiries, rather than Rule 26(b)(4)(A)(i), governed the trial court's analysis of plaintiff's disclosure obligation. Rather than limiting plaintiff to presenting evidence or theories only as disclosed, the trial court ruled that plaintiff could not present *any* expert testimony at all, ensuring that plaintiff could not survive summary judgment and therefore effectively dismissing plaintiff's claims on the merits. This was the nuclear option.

¶ 42. We have repeatedly required trial courts to explore less drastic sanctions for discovery violations, and have held that "[w]hen a trial court invokes the sanction of dismissal under Rule 37, it must 'indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby.' " *In re Houston*, 2006 VT 59, ¶ 11, 180 Vt. 535, 904 A.2d 1174 (mem.) (quoting *John v. Med. Ctr. Hosp. of Vt., Inc.*, 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978)). In *John* we considered a trial court's dismissal of a malpractice case as a sanction for plaintiff's failure to comply with expert disclosure requirements, concluding:

> The imposition of the dismissal sanction cannot be imposed merely as punishment for failure to comply with the court's order. As the Supreme Court noted in *Societe Internationale v. Rogers*, 357 U.S. 197 (1958), dismissal of an action because of a genuine inability to comply with a pretrial production order raises due process issues under the Fifth (and in this case, the Fourteenth) Amendment to the United States Constitution. In the absence of a finding of gross indifference, bad faith, or willfulness,

coupled with substantial prejudice to the adverse party, a less drastic sanction should be used.

136 Vt. at 519-20, 394 A.2d at 1135; see also *Manosh v. First Mountain Vt., L.P.*, 2004 VT 122, ¶ 10, 177 Vt. 616, 869 A.2d 79 (mem.) (reversing trial court's dismissal of case as discovery sanction given absence of findings that failure to comply was willful, that other party suffered prejudice, and that trial court had considered less drastic sanction); *C.C. Miller Corp. v. Ag Asset, Inc.*, 151 Vt. 604, 606, 563 A.2d 626, 627 (1989) (same).

¶ 43. Although I recognize that the trial court did not directly dismiss plaintiff's claims or enter a judgment of default, the effect of the court's broad preclusion of any expert testimony whatsoever was the same. In the absence of findings of bad faith, or indication that less drastic options were not appropriate, even if I concluded that the trial court's determination that plaintiff had not complied was within its discretion, I could not affirm the trial court's sanction in this case.

¶ 44. I am authorized to state that Justice Dooley joins this dissent.